Gary Wayne FREEMAN,
Plaintiff-Appellee,

v.

Richard RIDEOUT,
Defendant-Appellant.

No. 1513, Docket 86–2153.

United States Court of Appeals,
Second Circuit.

Argued Aug. 15, 1986.

Decided Dec. 30, 1986.

David W. Curtis, Defender General (Steven W. Gould, Defender), Correctional Facilities, Montpelier, Vt., for plaintiff-appellee.

Andrew W. MaClean, Asst. Atty. Gen., Waterbury, Vt., for defendant-appellant.

Before PRATT and MINER, Circuit Judges, and RE, Chief Judge, United States Court of International Trade, sitting by designation pursuant to 28 U.S.C. § 293(a).

RE, Chief Judge:

The defendant, Richard Rideout, a prison correctional officer, appeals from a judgment entered against him by the District Court for the District of Vermont, which held him liable for damages under 42 U.S.C. § 1983 (1982). The district court found that Rideout filed unfounded or false charges against plaintiff, Gary Wayne Freeman, a state prison inmate. The charges, which accused Freeman of having assaulted another inmate, were the basis for a prison disciplinary hearing, after which Freeman was found guilty, and sentenced to 30 days of "segregation."

Rideout contends that "the district court erred by improperly holding that Freeman's liberty interest was deprived without due process of law at the time the assault charges were filed."

Two questions are presented on this appeal: first, whether the filing of unfounded or false charges by a prison correctional officer against a prison inmate constitutes a deprivation of a constitutional right which permits recovery under 42 U.S.C. § 1983; and, second, whether the prison disciplinary hearing provided the plaintiff prison inmate with due process of law.

Since the Court holds that the filing of unfounded charges is not *per se* a constitutional violation under section 1983, and that the prison disciplinary hearing provided plaintiff with all the due process rights to which he was entitled, the judgment of the district court is reversed.

## *Facts*

On October 5, 1981, institutional disciplinary charges were presented against plaintiff-appellee, Gary Wayne Freeman, a prisoner at the Woodstock Correctional Facility. Freeman was accused of assaulting another prison inmate, Jeffrey Price. The charges were filed by defendant-appellant, Richard Rideout, a prison correctional officer at the Facility. As a result of the charges filed by Rideout, a prison disciplinary hearing was conducted on the institutional charges the following day. Freeman was not informed of the identity of his accuser, nor was the alleged assault victim allowed to testify at the hearing. In part, because of the perceived need to protect Price from retaliation, Price was not permitted to testify at the disciplinary hearing.

After the prison disciplinary hearing, Freeman was found guilty, and was sentenced to 30 days of "segregation" from the general prison population. The evidence upon which the finding of guilty was based consisted of three documents: an incident report written by defendant-appellant, Richard Rideout; a report written by Correctional Officer John Honymar; and the unsworn statement of Douglas Pratt, another prison inmate.

Thereafter, on July 12, 1982, Freeman sued Rideout in the District Court for the District of Vermont for compensatory damages pursuant to 42 U.S.C. § 1983. Freeman contended that the charges filed against him by Rideout were unfounded and false, and that the filing of false charges constituted a *per se* violation of the due process clause of the fourteenth amendment.

At the trial, Freeman introduced into evidence a deposition of the alleged assault victim, Jeffrey Price, which stated that he had not been assaulted by Freeman, and that he had not told Rideout that he had been assaulted by Freeman.

After trial, the district court found that the charges filed by Rideout against Freeman were unfounded, and concluded that "[t]he filing of unfounded charges against an inmate offends clearly established constitutional rights...." In addition, the district court found that "the reasons given by the chairman of the committee for refusing to allow [Freeman] to confront Price [were] not acceptable." Based on these findings and conclusions, the court awarded Freeman damages of $1500, plus costs. *See Freeman v. Rideout*, No. 82–234 Civ. (D. Vt. Jan. 2, 1986). Rideout has appealed the judgment of the district court.

## *Discussion*

In 1871, in response to continued acts of vigilante terrorism committed by the Ku Klux Klan, Congress passed "An Act to enforce the Provisions of the Fourteenth Amendment to the Constitution of the United States, and for other Purposes." Civil Rights Act of 1871, 17 Stat. 13; *see Allen v. McCurry*, 449 U.S. 90, 98–99, 101 S.Ct. 411, 416–17, 66 L.Ed.2d 308 (1980). This Act, presently codified at 42 U.S.C. § 1983, provides for a broad and comprehensive civil rights jurisdiction, and was intended "to ensure that individuals whose federal constitutional or statutory rights are abridged may recover damages or secure injunctive relief." *Burnett v. Grattan*, 468 U.S. 42, 55, 104 S.Ct. 2924, 2932, 82 L.Ed.2d 36 (1984). For many years, however, the Act was narrowly construed and rarely applied. In 1961, in the seminal case of *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), the Supreme

Court gave new life to the long dormant statute. Since then, section 1983 has been one of the nation's most frequently litigated statutes, and has been established as a primary source for relief to persons who believe that they have been deprived of a constitutional right under color of state law.

The historical origins of section 1983, and the role it has played in the federal protection of individual rights, were recently discussed by Justice Blackmun. *See* Blackmun, *Section 1983 and Federal Protection of Individual Rights—Will the Statute Remain Alive or Fade Away?*, 60 N.Y.U. L.Rev. 1 (1985). The cases and materials cited by Justice Blackmun reveal that a statute that enshrines constitutional values and protections should not be made to suffer by an unwarranted application or expansion.

Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983.

In this case, Freeman alleges that the filing of unfounded charges against him by Rideout, which resulted in his being placed in punitive segregation for 30 days, deprived him of a constitutionally protected liberty interest. Rideout concedes that Freeman had a constitutionally protected right not to be placed in punitive segregation without due process. *See, e.g., Hewitt v. Helms*, 459 U.S. 460, 470–72, 103 S.Ct. 864, 870–72, 74 L.Ed.2d 675 (1983); *Wolff v. McDonnell*, 418 U.S. 539, 555–57, 94 S.Ct. 2963, 2974–75, 41 L.Ed.2d 935 (1974). Rideout, however, also contends that the disciplinary hearing provided Freeman with all the procedural due process to which he was entitled.

Freeman maintains that, even if procedural due process was provided by the disciplinary hearing, the filing of unfounded charges is *per se* a violation of a constitutionally protected right. The district court agreed, and, having found that the disciplinary charges against plaintiff were false or unfounded, held that the defendant "deprived [plaintiff] of [a] liberty interest without due process when he filed unfounded charges." *Freeman v. Rideout*, No. 82–234 Civ., slip op. at 5 (D. Vt. Jan. 2, 1986).

There appears to be a confusion between the existence of a constitutionally protected right, and the deprivation of that right without procedural safeguards or due process. The constitutionally protected interest in this case is the right of liberty. The fourteenth amendment does not prohibit every deprivation of liberty. It does, however, prohibit the deprivation of liberty without due process of law. *See Patterson v. Coughlin*, 761 F.2d 886, 892 (2d Cir. 1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 879, 88 L.Ed.2d 916 (1986).

The prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. The plaintiff, as all other prison inmates, has the right not to be deprived of a protected liberty interest without due process of law. As is shown by the facts of this case, before Freeman could be placed in segregation, due process required that he be granted a hearing on whatever charges had been made against him. *See, e.g., Baxter v. Palmigiano*, 425 U.S. 308, 323, 96 S.Ct. 1551, 1560, 47 L.Ed.2d 810 (1976); *Wolff v. McDonnell*, 418 U.S. 539, 571 n. 19, 94 S.Ct. 2963, 2982 n. 19, 41 L.Ed.2d 935 (1974); *Sher v. Coughlin*, 739 F.2d 77, 81 (2d Cir.1984).

In his brief on this appeal, as before the district court, Rideout relies on the case of *Hanrahan v. Lane*, 747 F.2d 1137 (7th Cir.1984), as support for his contention that the mere filing of false charges does *not*

constitute a *per se* constitutional violation. In the *Hanrahan* case, the plaintiff, a prison inmate, brought suit, pursuant to section 1983, against three prison guards, the members of a prison disciplinary committee, and various other prison officials. The three prison guards had "planted" contraband in the prisoner's cell after he had refused to pay to the guards "shake down" or extortion money. On the basis of this planted or false evidence, the plaintiff, after a prison disciplinary hearing, lost 15 days of good conduct credit.

Plaintiff-Hanrahan's section 1983 claim was predicated upon the contention or assertion that "his due process rights were violated when the defendant prison guards planted false evidence and issued a disciplinary ticket in retaliation for failure to pay an extortion demand." 747 F.2d at 1139–40. Alleging that the complaint failed to state a claim upon which relief could be granted, the defendants moved to dismiss under Fed. R. Civ. P. 12(b)(6). The district court granted the motion and dismissed the complaint, and the Court of Appeals for the Seventh Circuit affirmed the dismissal. 747 F.2d at 1142 (per curiam).

In *Hanrahan*, the court of appeals stated that, although prisoners are entitled to be free from arbitrary action and conduct of prison officials, the protections against arbitrary action "are the procedural due process requirements as set forth in *Wolff v. McDonnell.*" *Id.* at 1140. Accordingly, the court held that "an allegation that a prison guard planted false evidence which implicates an inmate in a disciplinary infraction fails to state a claim for which relief can be granted where the procedural due process protections as required in *Wolff v. McDonnell* are provided." *Id.* at 1141. Since it was not clear whether the plaintiff had been afforded the procedural due process to which he was entitled under the *Wolff* case, the action was remanded to the district court.

The trial court in this case made no reference to the *Hanrahan* case. To support its conclusion that "[h]owever minimal due process rights afforded inmates may be,

they certainly include the right to be free from unfounded charges," the district court cited *Morrison v. Lefevre*, 592 F.Supp. 1052 (S.D.N.Y.1984). The *Morrison* case, however, does not support this conclusion.

In *Morrison v. Lefevre*, the plaintiff, a prison inmate, brought suit against prison officials who had planted contraband in a package which was to be given or delivered to the plaintiff. As a result, the plaintiff, without being informed of the charges against him, was transferred to another prison and placed in a "punitive isolation section." Plaintiff contended that "he suffered two deprivations of liberty without due process as a result of the planting and 'discovery'" of the contraband: first, that he was placed in the punitive isolation section, and, second, that he was transferred from one prison to another. The trial court agreed, and held that plaintiff was "denied the procedural protections to which he was entitled." *Id.* at 1072. The court identified the procedural deficiencies as the failure of the prison officials to give plaintiff notice of the charge, and their failure to afford plaintiff an opportunity to present his views to a prison official. *Id.* at 1073. Hence, it is clear that, in *Morrison*, the district court based its holding on the failure of the prison officials "to provide the proper hearing." *Id.* at 1074.

The district court, in *Morrison v. Lefevre*, also stated that "[h]owever minimal may be *the process due to prisoners* before segregation, that process *is insufficient when it has been contaminated by the introduction through state action of false inculpatory evidence. The introduction of false evidence in itself violates the due process clause.*" *Id.* at 1073 (emphasis added). This broad dictum, however, must be read in the factual context of the *Morrison* case. In *Morrison*, there was no hearing, and it was the mere filing of the charge itself that caused the plaintiff to be segregated. In the present case, Freeman was granted a hearing, and had the opportunity to rebut the unfounded or false charges. The holding in the *Morri-*

*son* case, therefore, does not support Freeman's claim under section 1983.

Since Freeman was granted a hearing, and was afforded the opportunity to rebut the charges against him, the defendant's filing of unfounded charges did not give rise to a *per se* constitutional violation actionable under section 1983. Plaintiff suffered as a result of the finding of guilty by the prison disciplinary committee hearing, and not merely because of the filing of unfounded charges by the defendant.

Since the validity of the hearing is also in issue, the court must now determine whether the disciplinary hearing provided Freeman with due process. In this case, Freeman asserts that he was deprived of due process because he was not permitted to cross-examine Jeffrey Price. On this question, the Supreme Court has held that, although prison inmates are entitled to due process, "the prisoner's right to call witnesses and present evidence in disciplinary hearings could be denied if granting the request would be 'unduly hazardous to institutional safety or correctional goals.'" *Ponte v. Real*, 471 U.S. 491, 105 S.Ct. 2192, 2195, 85 L.Ed.2d 553 (1985) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 566, 94 S.Ct. 2963, 2979, 41 L.Ed.2d 935 (1974)).

In the *Wolff v. McDonnell* case, a prison inmate filed a complaint, pursuant to 42 U.S.C. § 1983, against the administrators of the Nebraska Penal and Correctional Complex. The prisoner, on behalf of himself and other inmates of the Complex, contended that the prison's disciplinary proceedings did not comply with the due process clause of the fourteenth amendment. The defendant maintained that "the interest of prisoners in disciplinary proceedings is not included in that 'liberty' protected by the Fourteenth Amendment." 418 U.S. at 556–57, 94 S.Ct. at 2974–75. The court of appeals, *inter alia*, held that the prisoners were entitled to certain procedural protections, and that the specific requirements were to be determined on remand by the district court.

The Supreme Court granted *certiorari*, because the case raised "important ques-

tions concerning the administration of a state prison." *Id.* at 542, 94 S.Ct. at 2968. The *Wolff* case is particularly pertinent because the Supreme Court identified certain minimum protections or procedures that a prison inmate may expect at a disciplinary hearing. An inmate charged with a violation must be given (1) advance written notice of the charges at least 24 hours before the hearing; (2) the opportunity to appear at the hearing, to call witnesses, and to present rebuttal evidence; and (3) a written statement by the factfinders as to the evidence relied on for their decision, and the reasons for the prison committee's action. *Id.* at 564–66, 94 S.Ct. at 2987–80. The Court, however, also stated that "[p]rison officials must have the necessary discretion ... to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence." *Id.* at 566, 94 S.Ct. at 2980. Because the operation of a prison is an "extraordinarily difficult undertaking," the court added that the prison administrators should be free to exercise their discretion "without being subject to unduly crippling constitutional impediments." *Id.* at 566–67, 94 S.Ct. at 2979–80. The *Wolff* case is instructive because it identifies and sets forth the minimum procedures to which prison inmates are entitled under the fourteenth amendment.

In the more recent case of *Ponte v. Real*, 471 U.S. 491, 105 S.Ct. 2192, 85 L.Ed.2d 553 (1985), the Supreme Court held that the due process clause does not require prison officials to state on the record their reasons for denying an inmate's request to confront a particular witness. In *Ponte*, Chief Justice Rehnquist, writing for the Court, emphasized that "nowhere in *Wolff* or *Baxter* did we require the disciplinary board to explain why it denied the prisoner's request, nor did we require that those reasons otherwise appear in the administrative record." 105 S.Ct. at 2195. Hence, "so long as the reasons are logically related to preventing undue hazards to 'institutional safety or correctional goals.' the explana-

tion should meet the Due Process requirements as outlined in *Wolff."* *Id.* at 2196.

In determining whether a prison disciplinary committee properly excluded a witness from a hearing, because of the exigencies of the prison environment and the need of prison officials to maintain safety and discipline, a reviewing court must accord due deference to the decision of the administrator. On review, it is the responsibility of the court to balance the concern to safeguard the rights of individual inmates with the legitimate needs and aims of the penal institution. *See Superintendent, Mass. Correctional Inst. v. Hill,* 472 U.S. 445, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985); *Ponte v. Real,* 105 S.Ct. at 2195; *Baxter v. Palmigiano,* 425 U.S. at 321, 96 S.Ct. at 1559; *Wolff v. McDonnell,* 418 U.S. at 562–63, 94 S.Ct. at 2977–78. Indeed, the Supreme Court has stressed that the extent to which prisoners may confront and cross-examine witnesses should be left to the sound discretion of prison officials and administrators. *See, e.g., Baxter v. Palmigiano,* 425 U.S. at 321–22, 96 S.Ct. at 1559–60; *Wolff v. McDonnell,* 418 U.S. at 568–69, 94 S.Ct. at 2980–81.

The responsibility of prison administrators for the safety and security of the institution requires that they be granted the discretion to evaluate the potential hazards of allowing inmates to testify. Prison administrators may refuse prisoners the right to call witnesses, when the calling of certain witnesses may create a risk of reprisal or undermine authority. *Ponte v. Real,* 105 S.Ct. at 2197; *Baxter v. Palmigiano,* 425 U.S. at 321, 96 S.Ct. at 1559; *Wolfe v. Carlson,* 583 F.Supp. 977, 980 (S.D.N.Y.1984). In the language of the Supreme Court: "The better course ... is to leave these matters to the sound discretion of the officials of state prisons." *Wolff v. McDonnell,* 418 U.S. at 569, 94 S.Ct. at 2981. Therefore, given the limitations on the inmate's right to call and cross-examine witnesses, courts "should not be too ready to exercise oversight and put aside the judgment of prison administrators." *Wolff v. McDonnell,* 418 U.S. at 566, 94 S.Ct. at 2979.

At the trial before the district court, Assistant Superintendent Lawrence McLiverty, chairman of the prison disciplinary committee, testified that the committee was attempting to protect Jeffrey Price from potential retaliation by not allowing him to testify in the presence of Freeman. The district court found this explanation to be without merit, since "there was no suggestion of institutional disruption or danger to the security of the facility."

The concern of prison officials as to potential retaliation against inmate witnesses has been established as a sufficient reason for the exclusion of a witness from a disciplinary hearing. *Wolff v. McDonnell,* 418 U.S. at 566, 94 S.Ct. at 2979; *Wolfe v. Carlson,* 583 F.Supp. at 980. Indeed, in light of the broad discretion possessed by prison officials, the Supreme Court has indicated that "it may be that a constitutional challenge to a disciplinary hearing ... will rarely, if ever be successful." *Ponte v. Real,* 105 S.Ct. at 2197.

■ In this case, the concern of the prison official was rejected by the district court as "unsatisfactory," because there was "no suggestion, much less proof, that the security of the Woodstock facility or the safety of its residents would have been impaired by allowing Price to testify." The Supreme Court, however, has not required the prison officials to submit "proof." What has been deemed necessary is that the reasons stated be "logically related to preventing undue hazards to 'institutional safety or correctional goals.'" *Ponte v. Real,* 105 S.Ct. at 2196. In the present case, the district court improperly rejected the explanation provided by the administrator. Therefore, Jeffrey Price was properly excluded from the disciplinary hearing on October 6, 1981, and the procedural safeguards enunciated in *Wolff v. McDonnell* were satisfied.

Once a court has decided that the procedural due process requirements have been met, its function is to determine whether there is some evidence which supports the decision of the prison disciplinary board.

See Superintendent, Mass. Correctional Inst. v. Hill, 105 S.Ct. at 2774; *Hanrahan v. Lane,* 747 F.2d at 1141; *see also Willis v. Ciccone,* 506 F.2d 1011, 1018 (8th Cir. 1974). The Supreme Court has indicated the process to be used in making this determination:

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is *whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.*

*Superintendent, Mass. Correctional Inst. v. Hill,* 105 S.Ct. at 2774 (emphasis added).

█ In this case, the prison disciplinary committee relied on three documents. In addition to the report submitted by the defendant, Rideout, it also relied upon the report submitted by Officer Honymar, and the statement of inmate Douglas Pratt. The committee also heard the rebuttal testimony of plaintiff, Freeman, and inmate Jeffrey Maynard. On this record, the court holds that there existed sufficient evidence to support the disciplinary committee's finding of guilty, and the imposition of punitive sanctions deemed appropriate by the committee.

### Conclusion

In view of the foregoing, it is the holding of this Court that Rideout's filing of unfounded charges did not constitute a violation of plaintiff's rights under 42 U.S.C. § 1983 (1982). The Court also holds that the prison disciplinary hearing provided Freeman with the due process to which he was entitled. The judgment of the district court is, therefore, reversed.