36 F.3d 1089
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Antoine M. JACKSON, Plaintiff, Appellant,
v.
George A. VOSE, Defendant, Appellee.
 No. 93-2202
 United States Court of Appeals,
First Circuit.
 September 30, 1994
 
 Appeal from the United States District Court for the District of Massachusetts [Hon. Douglas P. Woodlock, U.S. District Judge ]
 Antoine M. Jackson on brief pro se.
 Nancy Ankers White, Special Assistant Attorney General, and Stephen G. Dietrick, Deputy General Counsel, Department of Correction, on brief for appellee.
 D.Mass.
 AFFIRMED.
 Before Torruella, Chief Judge, Selya and Stahl, Circuit Judges.
 Per Curiam.
 
 
 1
 Plaintiff Antoine Jackson appeals the district court's grant of summary judgment in favor of defendants on Counts II and V of his amended civil rights complaint.[1] "We review the grant of summary judgment de novo, employing the same criteria incumbent upon the district court in the first instance," Guzman-Rivera v. Rivera-Cruz, 1994 U.S. App. LEXIS 17,298 at * 3 (1st Cir. July 13, 1994.
 
 
 2
 Jackson is a prisoner at Massachusetts Correctional Institution in Cedar Junction. He challenges the constitutional adequacy of prison disciplinary hearings held on January 17, 1990 and March 1, 1990, which followed two discrete encounters between Jackson and correctional officers. Both hearings resulted in guilty findings, and sentences of 15 and 30 days respectively in isolation in the Departmental Segregation Unit (DSU).
 
 
 3
 Jackson argues that his due process rights were violated because he was denied the opportunity to call inmate witnesses from the general prison population to testify in person at each hearing. At the time of the hearings he was housed outside of the general prison population in the upper tier of the West Wing Segregation Unit (WWSU), which held disruptive inmates on "awaiting action" status.[2] Jackson had been transferred to WWSU for security reasons following the second incident.[3]
 
 
 4
 Jackson initially named five general population inmates whom he wished to call as witnesses at each hearing, in addition to "the whole [cell] block." The subject of the inmates' expected testimony was not revealed, however, despite a specific request for a brief summary on the official forms provided to Jackson for witness requests. A second request for inmate witnesses, made through Jackson's student attorney, named two general population inmates for one hearing, and three for the other. Again, however, the inmates' expected testimony was not described, although each was identified as an eyewitness to the relevant incident.
 
 
 5
 The chairman of the disciplinary board, defendant Aho, allowed Jackson the opportunity to obtain and present affidavits from the named inmates, but he denied the request that the inmates' testimony be presented in person. Aho's contemporaneous notes show that his decision was based on security concerns, given the difference between Jackson's housing in the prison and that of the inmates he sought to call as witnesses. Aho explained, in a deposition and affidavit submitted below, that he had decided that bringing general population inmates into a hearing in WWSU, would have been "unduly hazardous," particularly as Jackson had given "no basis for determining the relevance or necessity of these witnesses." Jackson's attorney, Aho said, accepted this decision with an "okay." If Jackson or his attorney had pressed the objection at the hearing (where the inmates' affidavits were read aloud), or otherwise made a persuasive case that Jackson needed additional evidence or live testimony, Aho said, "I could have continued the hearing and [explored] the possibility of relocating the hearing...."
 
 
 6
 A prisoner's right to call witnesses and present evidence at a disciplinary hearing is circumscribed by competing concerns for institutional safety and other correctional goals. See Ponte v. Real, 471 U.S. 491, 495 (1985); Wolff v. McDonnell, 418 U.S. at 539, 566 (1974); see also Baxter v. Palmigiano, 425 U.S. 308, 321 (1976) (a prisoner's right to confront and cross-examine adverse witnesses in a disciplinary hearing is generally more limited than the right to call friendly witnesses, but similar interest balancing may be applied); Smith v. Massachusetts Dep't of Correction, 936 F.2d 1390, 1399 (1st Cir. 1991) (same). The presence of witnesses at the hearing may be refused when it creates an undue risk of reprisal or harassment, undermines authority, or otherwise creates undue burdens on the safe administration of the prison. Ponte, 471 U.S. at 495; Wolff, 418 U.S. at 566; see also Ramer v. Kerby, 936 F.2d 1102, 1104 (10th Cir. 1991) ("[L]egitimate penological concerns include, but [are] not limited to, safety or correctional goals, expense, staffing requirements ... and the danger of harassment."). When challenged, prison administrators bear the burden of showing that the reasons for the denial were not arbitrary. Ponte, 471 U.S. at 497. They may make their reasons known at the time of the disciplinary action or wait until the prisoner brings a legal action. Ponte, 471 U.S. at 497; Smith, 936 F.2d at 1399-1400.
 
 
 7
 Our task is not to substitute our judgment for that of the prison officials charged with conducting the disciplinary hearing, but to determine whether the proof offered to explain the refusal to call these witnesses satisfactorily carries defendants' burden of showing that the decision was not arbitrary. Ponte, 471 U.S. at 497-99; see also Freeman v. Rideout, 808 F.2d 949, 955 (2d Cir. 1986) (same), cert. denied, 485 U.S. 982 (1988). Defendants offered evidence that the decision was based on a weighing of the known risks attendant on bringing general population prisoners into the WWSU, the difficulties of relocating the hearing, Jackson's failure to supply the requested information, and the lack of any reason to believe that affidavits would not supply Jackson's evidentiary needs. The explanation is logically related to institutional goals and clearly satisfies the due process requirements outlined in the cases. See Ponte, 471 U.S. at 497 ("[S]o long as the reasons are logically related to preventing undue hazards ... the explanation should meet the due process requirements as outlined in Wolff.").
 
 
 8
 Jackson argues that his failure to provide a description of the witnesses' testimony was an impermissible factor in the decision because it was not a "knowing and intelligent waiver" of his constitutional right to call witnesses. The argument is beside the point. To enable prison officials to evaluate a request for live testimony against competing institutional concerns, obviously a description of the nature of the expected testimony and any other indicia of need for the testimony may be fairly required. Accord Bostic v. Carlson, 884 F.2d 1267, 1274 (9th Cir. 1989). Only the prisoner can supply this information. Having failed to supply a description despite official requests therefor, Jackson is in a poor position to complain that, on balance, the official charged with the decision found that the known risks to institutional safety outweighed the prisoner's undisclosed needs.[4] We need not reach Jackson's argument that a blanket proscription on the testimony of all general population inmates would violate the due process clause, because we do not read the board's explanation as relying upon a blanket proscription.
 
 
 9
 We also agree with the district court's conclusion that there was no need to reach Jackson's argument that prior to the disciplinary hearings he was actually confined, illegally, in departmental segregation, rather than under the less restrictive regimen afforded prisoners on awaiting action status. First, the amended complaint cannot be construed as stating an independent claim in this regard, no matter how liberally it is read.[5] Second, the conditions of Jackson's confinement within the WWSU are not material to a determination of the due process adequacy of the disciplinary board's decision. The board's security concerns were based on Jackson's housing within the WWSU, not the specific conditions of his confinement. That the WWSU held both awaiting action and DSU prisoners may have added to security concerns, but it did not turn the board's decision into the sort of bootstrap justification disapproved in Kenney v. Commissioner of Correction, 393 Mass. 28, 35, 468 N.E.2d 616, 621 (1984) (where a prisoner was illegally transferred to DSU, administrators may not rely on his illegal incarceration as a justification for denying a request to call witnesses).
 
 
 10
 Lastly, we find no fault with the district court's decision that the defendants were protected by qualified immunity from damages liability for their discretionary decision. There was no proof that defendants violated any "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).
 
 
 11
 For the reasons stated, the summary judgment in favor of defendants on Counts II and V of the amended complaint is affirmed.
 
 
 
 [1]
 The district court dismissed a third count for failure to state a claim, and others were tried to a jury which returned a verdict in favor of defendants. Plaintiff has not appealed those decisions
 
 
 [2]
 Another tier of the WWSU held prisoners sentenced to the DSU following a disciplinary offense hearing and a finding of guilt. The conditions of confinement for the two groups of prisoners differed in that awaiting action prisoners had more privileges and their status was reviewed every seven days, rather than every 90 days. Jackson claims that he was actually confined illegally under DSU conditions prior to his hearings, but the conditions of his confinement within the WWSU are immaterial to the issues before us. See infra p. 8
 
 
 [3]
 In the first incident Jackson was charged with assaulting an officer, but he had remained, on awaiting action status, confined to a cell within the general prison population. When the second incident resulted in five disciplinary reports from as many officers, charging Jackson with threatening and disruptive behavior, and encouraging a work stoppage, he was moved to WWSU
 
 
 [4]
 In rejecting the same argument below, the district court placed emphasis on a clause in the published regulations that was not added until after the disciplinary hearings in question. 103 C.M.R. Sec. 430.14(4)(e) (1992) now expressly includes a prisoner's failure to provide a witness summary among the non-exclusive list of factors that may inform the disciplinary board's decision. Despite Jackson's denial of any responsibility for this error, it was invited by Jackson's own memorandum in support of partial summary judgment, which quoted the newer regulation as governing authority
 In any event, based on a de novo review, we find no fault with the district court's conclusion, and no unfairness under the regulation in effect at the time. The regulation provided ample notice that a request to call witnesses would be based on an evaluation of whether it would be "unduly hazardous to personal safety or institutional security." 103 C.M.R. Sec. 430.14(4) (1987). The non-exclusive list of factors to be considered included "relevance," and whether the evidence was "cumulative or repetitive." 103 C.M.R. Sec. 430.14(4)(a)(b). Moreover, Jackson was given personal notice, via the official request form, that the board required information from him supportive of his requests.
 
 
 [5]
 Jackson's argument that his first two pro se complaints may be reconstrued to state such a claim is irrelevant, and in any event not properly before us because it is raised for the first time in his reply brief