**Brendan M. McGUINNESS, Plaintiff,**

**v.**

**Larry E. DUBOIS, Commissioner of the Department of Corrections; Michael T. Maloney, Deputy Commissioner; Sgt. John T. Andrade; Donna Phillips, Disciplinary Sergeant, MCI–Cedar Junction; John Treddin, Disciplinary Hearing Officer; Ronald T. Duval, Superintendent, MCI–Cedar Junction, Defendants.**

**Civ. A. No. 93–12673–WGY.**

United States District Court,
D. Massachusetts.

May 1, 1995.

Brendan McGuiness, Walpole, MA, pro se.

Philip W. Silva, IV, Bridgewater State Hosp., Bridgewater, MA, for defendants.

*MEMORANDUM*

YOUNG, District Judge.

Brendan M. McGuinness ("McGuinness") was at all relevant times an inmate lawfully incarcerated at the Massachusetts Correctional Institute at Cedar Junction ("MCI–Cedar Junction"). Following an altercation with numerous prison guards, his placement in the West Wing Segregation Unit ("West Wing"), conviction in a disciplinary hearing, and the imposition of sanctions, McGuinness

brought this action *pro se* attacking his treatment by the guards and the conduct of his hearing. The focal point of McGuinness' attack on the hearing was the denial by the hearing officer, John Treddin ("Treddin"), for security reasons, of his request to have inmates who had allegedly witnessed the altercation testify on his behalf.

In a Memorandum and Order dated March 15, 1995, the Court ruled on the defendants' motion to dismiss or for summary judgment, allowing McGuinness to proceed with (1) his assault claim against defendant Sgt. John R. Andrade ("Andrade") and (2) his claim for declaratory judgment that his pre-hearing placement in the West Wing was unlawful and that the denial of his request to call witnesses violated his right to due process, but resolving all other issues against him. *McGuinness v. DuBois*, No. 93–12673, slip op., 1995 WL 169500 (D.Mass. Mar. 15, 1995). On April 6, 1995, McGuinness voluntarily dismissed his assault claim. The Court held a one-day trial on the declaratory judgment count on April 7, 1995, finding in McGuinness' favor, issuing its findings of fact and rulings of law from the bench, and reserving the right to issue this written memorandum concerning the declaratory judgment claim.

## I. Findings of Fact

While in the general population of MCI–Cedar Junction, McGuinness became involved in a physical altercation with prison guards, primarily Andrade. Corrections officers then confined McGuinness in what the institution terms the "awaiting action" tier of the West Wing. Another section of the West Wing is categorized by the institution as a Departmental Segregation Unit ("DSU"). The awaiting action tier is not so characterized.

Cited for a disciplinary infraction, McGuinness was scheduled for a disciplinary hearing. Under the procedures of the institution, McGuinness had the right, if he filled out a form, to request that witnesses be called on his behalf at the hearing. *See* 103 C.M.R. § 430.14 (1993). He was required as part of that procedure to submit some indication or outline of the expected testimony of the witnesses to be called. The purpose for this requirement was to prevent the elicitation of irrelevant or cumulative testimony. The institution, apparently, views cumulative testimony very strictly. More than one witness on an issue is, in the institution's view, cumulative. While this is far more strict than a court would view the issue, proper deference to the administrative authorities within the institution causes this Court to express no opinion on whether that policy in any way violated McGuinness' right to due process.

In this case, McGuinness did not fill out the form, and he did not set out in any detail the anticipated testimony of the witnesses whose testimony he sought. He did, however, write to the disciplinary officer requesting the presence of two witnesses by name at his hearing. This request was among the packet of papers delivered to Treddin, who was responsible for conducting the hearing.

Treddin reviewed the papers. He had personal familiarity with at least one of the witnesses whom McGuinness intended to call, one Justin Holmes ("Holmes"). Treddin had conducted disciplinary hearings concerning Holmes arising out of an altercation, and he therefore reasonably believed Holmes to be an assaultive individual. Treddin was also familiar with the institutional security requirements of MCI–Cedar Junction, including the requirement that any inmate entering into the West Wing from the general population had to be strip-searched and accompanied by two correction officers. Treddin was also aware of the restraints required within the institution to move inmates from place to place within the West Wing, and the restraints or lack of restraints afforded inmates in the presence of hearing officers at disciplinary hearings. Treddin further knew that to bring two or three inmates from general population into the West Wing would have at least some effect on the allocation of correction officer resources and the deployment of the forces within the institution.

At the time of McGuinness' hearing, Treddin had served for the better part of two years as a hearing officer and had conducted several hundred hearings. He had conducted between 30 or 40 hearings within the West Wing, and was well aware of an institutional policy of denying the requests of in-

mates confined in the West Wing to present witnesses from the general population. The witnesses whom McGuinness wanted were at the time of the hearing housed in the general population. In all the time that he had been conducting hearings within the West Wing, Treddin had never caused a witness to be brought from the general population into the West Wing and, indeed, he did not know of a single case in which an inmate witness was brought into the West Wing from general population. Treddin did know of rare occasions in which disciplinary hearings had been moved outside the West Wing.

As noted, Treddin denied McGuinness' request to call witnesses. The Court finds, and there is no evidence to the contrary, that Treddin denied the request as matter of institutional policy, a policy with which he personally concurred and thought wise, but general institutional policy nevertheless. While Treddin knew or reasonably believed that at least one of the proposed witnesses, Holmes, had been guilty of assaultive behavior in the past, the particular dangers posed by the introduction of these inmates into the West Wing played no determinative role in his decision. Nor did Treddin deny the request because of McGuinness' failure fully and on the proper form to set forth the anticipated testimony so that Treddin could determine its relevance or cumulative effect. Rather, Treddin's decision was made consistent with the institutional policy of denying all requests by West Wing residents to have general population inmates present to testify at hearings held in the West Wing.

In short, as he candidly admitted at trial, Treddin denied McGuinness the requested witnesses based solely on McGuinness' location within the institution.

## II. Rulings of Law

■ It is the ruling of this Court that, properly interpreted, *Kenney v. Commissioner of Correction*, 393 Mass. 28, 35, 468 N.E.2d 616 (1984), stands for the proposition that witnesses cannot be denied in a disciplinary hearing simply based upon the location of the individual within the prison. *Abrazinski v. DuBois*, 876 F.Supp. 313, 323 (D.Mass.1995) (Tauro, C.J.) (stating that the

*Kenney* court "found that isolation in a segregation unit alone, even if legal, is not sufficient to support a denial of witnesses"); *see also Guyton v. DuBois*, No. 92–1819, slip op. (Mass.Super.Ct. Jul. 20, 1992) (King, J.). There must be more. There must be some case-specific determination supporting the hearing officer's decisions regarding the denial of witnesses, rather than rote application of a blanket general policy.

This determination does not do violence to the decision of Justice McHugh in *Wilson v. Vose*, No. 89–5579, slip op. (Mass.Super.Ct. Nov. 23, 1992). This Court follows the Superior Court's decision in *Wilson*, a case not involving the denial of witnesses at a disciplinary hearing, that the awaiting action tier of the West Wing is not a DSU. Justice King's decision in *Guyton*, a case that did involve the denial of witnesses to West Wing inmates, is properly interpreted as holding implicitly precisely what this Court now says expressly: to deny an inmate witnesses simply because of his location in the West Wing treats the awaiting action tier of the West Wing, in that sense, identically to a DSU and therefore runs afoul of the rule in *Kenney*. That interpretation of Justice King's ruling in *Guyton* is adopted here.

■ This result is supported by reference to the Massachusetts regulations governing the Department of Correction. Those regulations read in pertinent part:

The inmate shall be allowed to call and question witnesses in his defense, or to present other evidence, when permitting him to do so will not be unduly hazardous to personal safety, institutional safety or correctional goals. The factors that the hearing officer may consider when ruling on an inmate's request to call witnesses, questioning of witnesses, or offer of other documentary or physical evidence shall include, but shall not be limited to, the following:

(a) Relevance;

(b) Whether the evidence is cumulative or repetitive;

(c) **Hazards presented by an individual case;**

 

(d) Unavailability of the reporting staff person or other staff person for a prolonged period of time due to illness, vacation or other authorized absence, or for other good cause;

(e) Failure of the inmate to provide a summary of the expected testimony of a proposed witness.

103 C.M.R. § 430.14(4) (emphasis supplied). The regulations thus contemplate, if not demand, a case-specific determination that security or other valid institutional objectives require or allow the denial of an inmate's request to present witnesses at a disciplinary hearing. In this case, it is true that McGuinness did not provide summaries of anticipated testimony; that his witnesses' testimony may in fact have been cumulative or irrelevant; and that subsections (a), (b), and (e) would permit exclusion on those grounds. *See Parzyck v. Dubois*, No. 94–30032–MAP, 1994 WL 606314, at *4 (D.Mass. Nov. 4, 1994) (Ponsor, J.). Treddin did not, however, base his denial at the time on those grounds, but relied on the institutional policy which, in effect, removed any discretion from the hearing officer concerning the issue.[1] That he cannot do.

As a result, the Court declared that the rulings that followed the disciplinary hearing held by Treddin are void and of no effect. McGuinness was not given the protections afforded him by Department of Correction regulations as interpreted in *Kenney, Abrazinski*, and *Guyton*, and thus the hearing officer's determination must be set aside. That determination may play no part whatsoever in any further classification, penal, disci-

plinary, or release decisions with respect to McGuinness.

---

1. This was not the case in *Jackson v. Vose*, No. 93–2202, 1994 WL 530139, at * 1 (1st Cir. Sept. 30, 1994). In that case, a disruptive inmate, like McGuinness, was placed in the awaiting action tier of the West Wing pending a disciplinary hearing. He also requested that inmate witnesses testify at the hearing, but failed to reveal their expected testimony. The officer conducting the hearing explained to the court that "he had decided that bringing general population inmates into a hearing in [West Wing], would have been 'unduly hazardous,' particularly as Jackson had given 'no basis for determining the relevance or necessity of these witnesses.'" *Id.* Thus the hearing officer made a particularized finding, and denied the request only after applying the factors listed in 103 C.M.R. § 430.14(4) to the case before him. The officer further averred that if the inmate or his attorney had pressed the objection to the denial, he "could have continued the hearing and [explored] the possibility of relocating the hearing." *Id.* In McGuinness' hearing, on the other hand, there was no such individualized determination by or flexibility on the part of Treddin, but rather nothing more than the mechanical application of a general institutional policy.