**Jeffrey ALNUTT, Plaintiff,**

v.

**William CLEARY, James Kenner, Keith White, Robert Gruver, Joseph Bates, Richard Koslowski, Thomas Lamb, Carl Anderson, Mary Guenther, Defendants.**

**No. 90–CV–804L.**

United States District Court,
W.D. New York.

Jan. 8, 1996.

Margaret E. Somerset, Harris, Beach & Wilcox, Rochester, NY, for plaintiff.

Charles D. Steinman, Office of New York State Attorney General, Rochester, NY, for defendants.

### DECISION AND ORDER

LARIMER, Chief Judge.

### BACKGROUND

This is a civil rights action filed pursuant to 42 U.S.C. § 1983 by Jeffrey Alnutt ("Alnutt"), a prisoner who at all times relevant was incarcerated at the Wende Correctional Facility ("Wende").[1] Pending before the Court are the parties' cross-motions for summary judgment.

---

1. Subsequent to filing his original complaint, Alnutt filed an amended complaint on May 7, 1991. Thereafter, after being appointed counsel, Alnutt filed his second amended complaint on November 12, 1993.

Alnutt alleges that his constitutional rights were violated due to certain actions taken against him by various corrections officers at Wende after his election as an Inmate Grievance Resolution Committee (IGRC) representative in late February, 1990. For the reasons discussed, *infra*, Alnutt's motion for partial summary judgment is denied and defendants' motion for summary judgment is granted in part and denied in part.

## FACTS

The facts, as alleged by Alnutt, are as follows: Alnutt was an inmate at Wende where defendants were all employed in various capacities. Prior to his election as IGRC representative in late February 1990, Alnutt was housed at Wende in what was referred to as the "Honor Block." Prior to his election he had never been cited for any disciplinary violations.

According to Alnutt, after he was elected as an IGRC representative, the corrections officers who guarded his cell block—defendants William Cleary ("Cleary"), James Kenner ("Kenner"), and Keith White ("White")— began to systematically harass him. Such harassment, according to Alnutt, included verbal taunts, denigrating remarks, a deprivation of meals, bedding, clothing and mail, and interference with his job responsibilities both as the IGRC representative and "feed-up" man in the mess hall. He also alleges that he was required to undergo more drug tests than had previously been the case.

Alnutt claims that defendant Robert Gruver ("Gruver"), the grievance officer who was charged with the responsibility of overseeing Alnutt's duties as IGRC representative, recommended the increased drug testing and threatened Alnutt that he would be "set up" if he did not stop his activities as an IGRC representative.

Before he was elected as IGRC representative, Alnutt had been subjected to only one urine test in the two years that he had been at Wende. However, during the four months that he served as IGRC representative, he was subjected to three urine tests.

On July 12, 1990, Alnutt's urine sample was tested by defendants Carl Anderson ("Anderson") and Thomas Lamb ("Lamb"). Apparently, neither Anderson, who performed the initial urine test, nor Lamb, who performed the confirmatory test, recalibrated the testing machine prior to testing Alnutt's urine, which Alnutt claims was in violation of a Department of Correctional Services' ("DOCS") Directive, codified at 7 N.Y.C.R.R. §§ 1020 et seq. Alnutt claims that the failure to recalibrate the machine was significant because another inmate had tested positive for cannabinoids immediately before Alnutt's test.

In Alnutt's misbehavior report charging drug use, Anderson declared that he had recalibrated the testing machine prior to administering the test. At his deposition, however, Anderson admitted that he had *not* calibrated the machine as claimed. He attributed this change in testimony to his confusion at the time the initial report was prepared. But, Anderson steadfastly maintains that the failure to recalibrate the machine did not affect the validity of the test as administered.

There were other problems with the test. The misbehavior report indicates that defendant Lamb performed a second, confirming test. Apparently, Anderson filled out the forms and signed Lamb's name to them concerning the results of this test. At his deposition, Lamb testified that he did the second test which showed the presence of marijuana. He also admitted, however, that proper recalibration procedures had not been followed prior to his test and that he knew that was the case when the initial misbehavior report was filed.

Defendant Joseph Bates ("Bates"), was the hearing officer at the hearing on the drug charge in the misbehavior report. Defendant Richard Koslowski ("Koslowski"), testified about the process and general procedure for narcotics testing. He explained some of the matters that Alnutt claimed were suspect about his test. For example, he verified that the test results were positive for marijuana and that certain "control" numbers on the report were irrelevant in determining the results of Alnutt's tests. Alnutt objects to the procedures used when Koslowski testified. Prior to Koslowski's testimony, Bates

turned off the recording device, sent Alnutt out of the hearing room, and conferred privately with Koslowski. Koslowski also admitted that he conferred with Lamb about Alnutt's case prior to testifying.

Alnutt claims that, at his hearing, Bates prevented him from introducing evidence that would have demonstrated the mistakes that had been made by Anderson and Lamb in conducting the drug test. After the hearing, Bates found Alnutt guilty on the disciplinary charge, sentenced him to 90 days in special housing ("SHU") with a loss of privileges and discharged him from his position as IGRC representative.

Prior to Alnutt's hearing on the drug charge, defendant Mary Guenther ("Guenther") transferred Alnutt to Southport Correctional Facility ("Southport") around midnight on July 18, 1990, while he was still an IGRC representative. This transfer was effected even though DOCS' regulations, codified at 7 N.Y.C.R.R. § 701.5, require a hearing prior to the transfer of an IGRC representative unless the representative creates an emergency situation necessitating his immediate removal. Guenther stated that Alnutt was transferred due to an emergency situation that existed at Southport Correctional Facility which required an exchange of inmates.

## DISCUSSION

### I. Standards on Summary Judgment

A motion for summary judgment may be granted only when there is no genuine issue of material fact remaining for trial and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). All ambiguities and inferences must be resolved in favor of the non-moving party and all doubts as to the existence of a genuine material issue for trial should be resolved against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330, 106 S.Ct. 2548, 2556, 91 L.Ed.2d 265 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–159, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970).

If, when "[v]iewing the evidence produced in the light most favorable to the nonmovant ... a rational trier could not find for the non-movant, then there is no genuine issue of material fact and entry of summary judgment is appropriate." *Bay v. Times Mirror Magazines, Inc.*, 936 F.2d 112, 116 (2d Cir.1991); *Binder v. Long Island Lighting Co.*, 933 F.2d 187, 191 (2d Cir.1991).

No genuine issue of material fact exists if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party ..." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

### II. Plaintiff's Due Process Claims

#### A. Verbal Harassment and False Disciplinary Ticket

Alnutt's first cause of action, against Cleary, Kenner, White and Gruver, alleges that defendants verbally harassed him and caused false disciplinary tickets to be issued against him in a concerted effort to deter him from performing his duties as an IGRC representative.

From the pleadings, it appears that Alnutt's essential claim is for retaliation. However, to the extent that Alnutt claims that the harassment and false disciplinary ticket, in and of themselves, violated his constitutional rights, those claims must fail.

To succeed on a § 1983 claim, the plaintiff must demonstrate that state officials, acting under color of state law, deprived him of a right guaranteed him by the Constitution or laws of the United States. *Rodriguez v. Phillips*, 66 F.3d 470 (2d Cir. 1995); *Williams v. Pecchio*, 543 F.Supp 878, 879 (W.D.N.Y.1982). Section 1983 does not provide a remedy for every common law tort and a civil rights suit is not designed to rectify harassment or verbal abuse. *Williams v. Pecchio, supra* at 879; *Johnson v. Glick*, 481 F.2d 1028 (2d Cir.1973).

It is well established that, " '[m]ere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations.' " *Williams v. Pecchio, supra* at 879–80 (quoting *Coyle v. Hughes*, 436 F.Supp. 591, 593 (W.D.Okl.1977)).

Thus, Alnutt's claim that the alleged verbal harassment to which he was allegedly subjected violated his constitutional rights must be dismissed.

 Likewise, any contention by Alnutt that the allegedly false misbehavior report in and of itself violated his constitutional rights must fail. It is well settled that "... a prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir.1986). Rather, an inmate has the right not to be deprived of a protected liberty interest without due process of law (emphasis added). *Id.* As was the case in *Freeman*, Alnutt was granted a hearing and was afforded the opportunity to rebut the charges against him. "Plaintiff suffered as a result of the finding of guilty by the prison ... disciplinary hearing, and not merely because of the filing of unfounded charges by the defendant." *Freeman, supra* at 953. Thus, the filing of charges against him did not give rise to a *per se* constitutional violation actionable under § 1983.

Therefore, summary judgment in favor of defendants must be granted as to Alnutt's § 1983 claim that his constitutional rights were violated as a result of harassment he suffered at the hands of the corrections officers and for the allegedly false misbehavior report filed against him.

### B. Disciplinary Hearing

Although Alnutt's complaint fails to state a claim for relief under § 1983 in reference to the allegedly false misbehavior report that was issued, he may still state a claim that his due process rights were violated in connection with the hearing that was held on July 21, 1990 to adjudicate the charge.

 It is clearly established that inmates in prison disciplinary hearings are entitled to certain due process protections which include: (1) advance written notice of the claimed violation; (2) a written statement of the hearing officer as to the evidence relied upon and the reasons for the disciplinary action taken; and (3) an opportunity for the inmate to call witnesses and present evidence in his defense as long as that process would not jeopardize institutional safety or correctional goals. *Wolff v. McDonnell*, 418 U.S. 539, 563–67, 94 S.Ct. 2963, 2978–80, 41 L.Ed.2d 935 (1974).

 Alnutt alleges a number of deficiencies surrounding his hearing. Alnutt claims that his constitutional due process rights were violated by Bates' failure to afford him a hearing before an impartial hearing officer; by failing to give Alnutt an opportunity to call witnesses in his defense; and by not being informed in advance about the adverse testimony of Koslowski. (Tier III Hearing transcript, p. 47, July 21, 1990). Additionally, Alnutt alleges that Koslowski violated his due process rights by testifying falsely against Alnutt in the hearing. Finally, Alnutt claims that his due process rights were violated because there was insufficient evidence to support Bates' guilty determination.

Concerning the allegations against Bates, there is no evidence, other than Alnutt's unsubstantiated claim, that Bates was not impartial or that he prejudged Alnutt's guilt. Nor is there any evidence that Bates failed to give Alnutt the opportunity to call witnesses in his behalf. The transcript of the hearing indicates that Bates called the only two witnesses requested by Alnutt, Corrections Officers Anderson and Phillips. There is nothing in the transcript to indicate that Bates refused to call other witnesses requested by Alnutt or that Alnutt made any objections about a witness not being called.

 Alnutt's claims relating to Koslowski are also without merit. It is hard to imagine how Alnutt can complain, since it was he that requested that Koslowski be called as a witness. After there had been some evidence concerning procedures used to conduct the drug test, Bates specifically asked Alnutt if he wanted to call Koslowski to explain the urine testing procedures. Alnutt affirmatively asked that Koslowski be called as a witness, and he was.

Alnutt's present contention that he should somehow have been advised, in advance, as to the nature of Koslowski's testimony is not supported by any legal authority. Alnutt has

*no constitutional right to advance notice of the identities of the witnesses or the content of their testimony. There is no basis for this claim.*

In addition, the claim that Koslowski gave false testimony must also be dismissed. Alnutt alleges that Koslowski gave false testimony at the hearing regarding urine testing procedures. However, there is no evidence whatsoever that the testimony given by Koslowski was false. Alnutt seems to suggest that merely because Koslowski spoke to Bates and Lamb prior to giving testimony that his testimony must be "false." There is no justification for such an inference. From the facts, such a conclusion would be pure speculation. Alnutt has not submitted any evidence by way of affidavit or otherwise that Koslowski's testimony regarding urine testing procedures was incorrect, let alone deliberately false. The testimony stands unrebutted.

Alnutt's last claim relating to the hearing is that there was insufficient evidence upon which Bates could have found Alnutt guilty of the disciplinary charge.

In determining matters of sufficiency, the court's function is to determine "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Superintendent, Mass. Correctional Inst. v. Hill,* 472 U.S. 445, 455–456, 105 S.Ct. 2768, 2773–75, 86 L.Ed.2d 356 (1985). At the conclusion of the hearing, Bates specifically listed the items that he relied on: the report and verbal testimony of Anderson as well as the urinalysis test which indicated the presence of marijuana.

There is no basis for liability against Bates concerning the sufficiency of evidence. The evidence presented to Bates was more than ample to support the guilty determination. Bates was not unreasonable in basing his decision on the test result and on Anderson's testimony that proper procedures had been

followed. The fact that Anderson's hearing testimony concerning recalibration of the machine is now suspect does not change the result concerning the due process afforded Alnutt at the time of his hearing. Any alleged inconsistencies in Anderson's testimony was not developed until several years after the hearing as a part of the discovery in this lawsuit. But, to the extent the claim is against Bates, he is certainly not liable for accepting testimony at the hearing which later turns out to be questionable.[2]

Furthermore, although it is not entirely clear, it does not appear that Alnutt has a claim against either Anderson or Lamb concerning the procedure used to administer the drug test except as it relates to Alnutt's retaliation claim, discussed, *infra.* But, so that there is no doubt, if Alnutt purports to proceed against Anderson and Lamb for giving false information concerning recalibration of the testing machine, *Freeman v. Rideout, supra,* bars relief under § 1983 since Alnutt was afforded a proper due process hearing on the underlying drug charge.

### C. Transfer

In his third cause of action, Alnutt alleges that the actions of defendants Guenther, Gruver, Anderson, Lamb and Bates caused his transfer from Wende without a hearing while he was still an IGRC representative in violation of 7 N.Y.C.R.R. § 701.5.

On the facts before me, it does appear that Alnutt's transfer contravenes the regulation limiting the transfer of IGRC representatives. Although there is an exception to the hearing requirement if the inmate's continued presence creates an emergency, the transfer here was not made for that reason.

Defendant Guenther claims that Alnutt was transferred in response to an emergency situation at another facility which required a "swap" of inmates. Neither Guenther nor

---

**2.** Defendants also argue that Alnutt is collaterally estopped from arguing that there was no evidence to support Bates' determination because Alnutt argued this precise issue in an Article 78 proceeding in state court. The court in the Article 78 proceeding sustained Bates' finding. Given my finding that there was sufficient evidence

for Bates to find Alnutt guilty, there is no need to rule on the collateral estoppel issue.

I note, however, that the Second Circuit has recently questioned whether collateral estoppel ever applies concerning fact issues determined in prison disciplinary hearings. *Colon v. Coughlin,* 58 F.3d 865, 869 (1995).

anyone else claims that Alnutt created an emergency situation at Wende which required his removal and transfer. The procedure for transferring an inmate who is an IGRC representative is quite clear and specific. What is also quite clear is that the correct procedure was not followed concerning Alnutt's transfer.

However, a violation of a state regulation does not invariably involve a liberty interest protected by the Constitution. In the present case, if Alnutt did have such a liberty interest it would necessarily derive from a state created liberty interest because "... no Due Process Clause liberty interest of a duly convicted prison inmate is infringed when he is transferred from one prison to another within the State, whether with or without a hearing, absent some right or justifiable expectation rooted in state law that he will not be transferred except for misbehavior or upon the occurrence of other specified events." *Montanye v. Haymes,* 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976).

Absent the recent Supreme Court decision in *Sandin v. Conner,* — U.S. —, 115 S.Ct 2293, 132 L.Ed.2d 418 (1995), Alnutt's argument that the State had created a liberty interest by virtue of 7 N.Y.C.R.R. § 701.5 might have been persuasive. Prior to *Sandin,* courts, in determining whether a state created a liberty interest, asked "whether the State had gone beyond issuing mere procedural guidelines and had used 'language of an unmistakably mandatory character' such that the incursion on liberty would not occur 'absent specified substantive predicates.'" *Sandin, supra* at —, 115 S.Ct. at 2299, quoting *Hewitt v. Helms,* 459 U.S. 460, 471–472, 103 S.Ct. 864, 871–872, 74 L.Ed.2d 675 (1983).

Under pre-*Sandin* analysis, the state in the present case might very well have created a liberty interest in the right of an IGRC representative to be free from transfer unless certain procedures were followed, given the mandatory language employed in the regulation.

However, *Sandin* has dramatically changed the landscape concerning these issues. *Sandin* expressly rejected the distinction between mandatory and discretionary language previously relied upon by courts. The focus now under *Sandin* is whether the challenged state action imposes an atypical and significant hardship upon a prisoner's liberty that is distinguishable from the normal restrictions on liberty that are to be expected as the result of a sentence of incarceration. *Sandin,* — U.S. at —, 115 S.Ct. at 2300.

I find that under the new standards adopted by the Supreme Court in *Sandin,* the State's regulation limiting the transfer of IGRC representatives did not create a liberty interest and does not provide a basis for a civil rights action if that policy is violated. Alnutt's transfer was neither atypical nor did it impose a significant hardship beyond that expected as part of a sentence of imprisonment. Violation of this regulation does not give rise to a state created liberty interest subject to Due Process protections. Alnutt's claim concerning the transfer must be dismissed.[3]

### III. *Plaintiff's Retaliation Claims*

Alnutt claims, in his first cause of action against Cleary, Kenner, White and Gruver, that the verbal harassment he endured and the false disciplinary ticket issued against him were in retaliation for his activities as an IGRC representative. Likewise, in his second cause of action, Alnutt alleges that Gruver, Lamb and Anderson improperly administered his urinalysis test in accordance with DOCS directives, all in retaliation for his IGRC activities.

To establish a claim for retaliation under § 1983, Alnutt must initially show that his conduct was protected by the First Amendment and that defendants' conduct was motivated by or substantially caused by an exercise of his First Amendment rights.

**3.** This finding does not preclude Alnutt from introducing, at trial, evidence of the transfer in support of his retaliation claim.

*Gagliardi v. Village of Pawling*, 18 F.3d 188, 194 (2d Cir.1994).

I find that Alnutt's conduct was protected by the First Amendment. "There is no question ... that an inmate may resort to section 1983 in attempting to vindicate substantive rights arising out of ... the First Amendment ..." *Franco v. Kelly*, 854 F.2d 584, 590 (2d Cir.1988). In *Franco*, a prisoner alleged that he was issued a disciplinary report as part of a pattern of false disciplinary actions taken against him in retaliation for his cooperation with an investigation by New York's Inspector General concerning abuse of inmates at the Attica Correctional Facility. The Court found that the allegations in the complaint implicated the prisoner's right to petition government for redress of grievances, as guaranteed by the First and Fourteenth Amendments. *Franco, supra* at 589.

*Franco* recognized that prisoners must be permitted the "free and uninhibited access" to both administrative and judicial forums for the purpose of seeking redress of grievances. *Franco, supra* at 589; See also *Sostre v. McGinnis*, 442 F.2d 178, 200 (2d Cir.1971) (in banc), *cert. denied*, 404 U.S. 1049, 92 S.Ct. 719, 30 L.Ed.2d 740 (1972). Furthermore, "[l]ike the right of access to the courts, the right to petition is substantive rather than procedural and therefore 'cannot be obstructed regardless of the procedural means applied.'" *Franco, supra* at 589, quoting *Morello v. James*, 810 F.2d 344 (2d Cir.1987).

There are numerous cases which have found that an inmate stated a cause of action under § 1983 where the inmate alleged that he was retaliated against because he petitioned for redress of grievances. *Jones v. Coughlin*, 45 F.3d 677 (2d Cir.1995) (inmate stated cause of action where he alleged retaliation as result of administrative complaint he filed against corrections officer); *Morrison v. Lefevre*, 592 F.Supp 1052 (S.D.N.Y. 1984) (inmate stated cause of action where he alleged retaliation, due, in part, to assistance he provided to other prisoners in filing lawsuits); *McCorkle v. Walker*, 871 F.Supp 555 (N.D.N.Y.1995) (inmate stated a claim where he alleged that a prison nurse filed false charges against him in retaliation for his informing prison officials that she was nurse on duty when another inmate nearly drowned in infirmary); *Payne v. Axelrod*, 871 F.Supp 1551 (N.D.N.Y.1995) (inmate stated cause of action where he alleged that a razor blade was planted in his cell in retaliation for reporting that a corrections officer set a fire in an inmate's cell); *Cale v. Johnson*, 861 F.2d 943 (6th Cir.1988) (inmate stated cause of action by alleging retaliation for complaining to associate warden concerning the poor quality of the food); *McDonald v. Hall*, 610 F.2d 16 (1st Cir.1979) (inmate stated cause of action where he alleged that he was transferred in retaliation for filing suits against prison officials, and for giving legal assistance to other inmates).

Admittedly, the facts of the present case are somewhat different from some of the cases involving an inmate's right to petition the government. However, the principles established in those cases support the concept that Alnutt has a protected First Amendment right to engage in his duties as IGRC representative without fear of reprisal or retaliation.

The establishment of IGRCs in correctional facilities is mandated by New York State Corrections Law § 139, which provides that:

"... The commissioner shall establish ... grievance resolution committees to resolve grievances of persons within such correctional institution. Such grievance resolution committees shall consist of five persons, four of whom shall be entitled to vote, two of whom shall be inmates of such correctional institution, and a non-voting chairman." N.Y.S. Corr. Law § 139(1).

To implement the mandate of § 139, the state has developed a comprehensive and elaborate regulatory scheme which details the policy behind the IGRC's creation, along with its composition, the members' duties, removal devices, grievance procedures, and a code of ethics for IGRC staff and inmate representatives.

According to the regulations, the IGRC was created to provide inmates with an "orderly, fair, simple and expeditious method of resolving grievances ..." 7 N.Y.C.R.R.

§ 701.1. Basically, the role of the IGRC is to resolve grievances or make recommendations for the resolution of grievances.

As part of his duties as an IGRC representative, Alnutt investigated grievances filed by other inmates, sat on the committee, voted on the grievances and participated in the written decisions of the IGRC. 7 N.Y.C.R.R. § 700 *et seq.* Alnutt, as an IGRC representative, was an integral part of the IGRC framework. He was the conduit through which inmates voiced their complaints. He spoke with the inmates regarding their grievances, he investigated the grievances and he took part in deciding how best to resolve the grievances.

It could not be seriously argued that those inmates who actually filed grievances with the IGRC were not exercising their First Amendment rights to petition the government for redress of grievances. It would be curious indeed for this Court to recognize the rights of inmates to petition for redress of grievances without fear of retaliation but deny Alnutt · the same right in connection with his role in reviewing inmate grievances and ruling on them. In my view, as IGRC representative, Alnutt has a constitutional right to be protected against retaliation by state officers who are not pleased with the activities engaged in and decisions made by Alnutt as IGRC representative.

■ Indeed, defendants do not really dispute that Alnutt was engaged in protected activity while performing his IGRC duties. Rather, they focus on the second requirement necessary for establishing a retaliation claim, i.e. the nexus between defendants' conduct and the exercise of Alnutt's First Amendment rights. Defendants argue that Alnutt has failed to come forward with any facts to support his contention that the actions of the defendants were in retaliation for his IGRC activities. However, Alnutt, in his complaint and affidavit, makes numerous allegations that, if true, could support a finding that defendants did retaliate against him for performing his IGRC duties. Not only has Alnutt alleged numerous specific instances of harassment directly related to his IGRC duties, but he has also set forth numerous adverse actions taken against him after his election as IGRC representative. The direct threats and harassment, along with the sequence of events that Alnutt cites suggests a possible correlation between the actions taken by defendants and Alnutt's activities as an IGRC representative. *Baker v. Zlochowon,* 741 F.Supp 436 (S.D.N.Y.1990). See also *Murphy v. Lane,* 833 F.2d 106, 108–09 (7th Cir.1987). The facts and the inferences drawn from them are matters for the jury and cannot be resolved here on a motion for summary judgment.

Thus, defendants' motion for summary judgment on Alnutt's claim of retaliation must be denied.

### CONCLUSION

Alnutt's motion for partial summary judgment is denied and defendants' motion for summary judgment is granted in part and denied in part.

Because Alnutt's claims concerning his disciplinary hearing and transfer have been dismissed, the complaint as to defendants Bates, Koslowski and Guenther is dismissed.

IT IS SO ORDERED.