**Angel GARRIDO, Plaintiff,**

v.

**Thomas A. COUGHLIN, Commissioner, R. Kuhlmann, Superintendent, C.O. P. Kayser, C.O. Smith, Defendants.**

**No. 86 Civ. 7664(MEL).**

United States District Court, S.D. New York.

June 27, 1989.

Angel Garrido, Wallkill, N.Y., pro se.

Robert Abrams, Atty. Gen. New York City, for defendants; Gayle A. Sullivan, Asst. Atty. Gen., of counsel.

LASKER, District Judge.

Angel Garrido, appearing *pro se*, alleges in this 42 U.S.C. § 1983 action that he suffered cruel and unusual punishment and was denied due process when, based on a false misbehavior report, he was wrongfully confined in a Special Housing Unit ("SHU") at Sullivan Correctional Facility, charged with disciplinary violations, and transferred to Clinton Correctional Facility. Defendants Commissioner of the New York State Department of Correctional Services Thomas A. Coughlin III, Superintendent of Sullivan Correctional Facility Robert H. Kuhlmann, Correction Officers Kayser and Smith move for summary judgment. The motion is granted.

## BACKGROUND

Garrido is an inmate in the New York State prison system. On January 20, 1986, while confined at Sullivan Correctional Facility, plaintiff confronted Correction Officers Kayser and Smith about Kayser's treatment of another inmate. Garrido was immediately confined in SHU. Smith and Kayser then filed a misbehavior report that accused Garrido of violent, threatening, and disorderly conduct in violation of four disciplinary provisions. At a disciplinary hearing on January 25, 1986 Garrido called one witness, who testified that plaintiff had

not assaulted Kayser. The hearing officer, Frank McCray, adjourned the hearing to arrange for the testimony of Kayser and Smith. Because of scheduling conflicts McCray was unable to contact Officers Smith or Kayser and the hearing never resumed, the charges against Garrido were dismissed as untimely, and he was released from SHU on February 4, 1986. Garrido asserts that he was never informed of the dismissal of charges. On February 13, 1986 the Department of Correctional Services transferred Garrido to Clinton Correctional Facility. Garrido's disciplinary record does not indicate that charges were brought against him.

## I. PERSONAL INVOLVEMENT

Defendants Coughlin and Kuhlmann move to dismiss the complaint based on plaintiff's failure to allege their personal involvement in the challenged conduct. Kuhlmann is charged with failure to "properly train or supervise his correctional officers," failure to "set firm rules governing the conduct" of Garrido's disciplinary hearing, and failure to "properly look into" the hearing.[1] Coughlin is alleged only to have ignored Garrido's letter of protest and request for an investigation of the allegations made in this action.

■ Supervisory officials cannot be held liable under § 1983 solely for the acts of others; "there must be some showing of personal responsibility." *Duchesne v. Sugarman*, 566 F.2d 817, 830 (2d Cir.1977).

Absent some personal involvement by [a defendant superintendent of a correctional facility] in the allegedly unlawful conduct of his subordinates, he cannot be held liable under section 1983. *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir.1987); *Williams v. Smith*, 781 F.2d 319, 323–24 (2d Cir.1986).

*Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987). Personal involvement in a constitutional violation under § 1983 may be found in a variety of situations:

A supervisory official, after learning of the violation through a report or appeal, may have failed to remedy the wrong, *see, e.g., United States ex rel. Larkins v. Oswald*, 510 F.2d 583, 589 (2d Cir.1975). A supervisory official may be liable because he or she created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue.... Lastly, a supervisory official may be personally liable if he or she was grossly negligent in managing subordinates who caused the unlawful condition or event, *see, e.g., Wright v. McMann*, 460 F.2d 126, 135 (2d Cir.1972) (warden responsible for condition of disciplinary units at prison).

781 F.2d 319, 323–24 (2d Cir.1986) (citations omitted).

■ Coughlin's only alleged connection to this case—that he ignored Garrido's letter of protest and request for an investigation of the allegations made in this action—is insufficient to hold him liable under this standard for the alleged violations. Garrido has not alleged that Coughlin was personally involved in the preparation of the misbehavior report or the decision to confine plaintiff in SHU. This case is distinguishable from *United States ex rel. Larkins v. Oswald*, 510 F.2d 583, 589 (2d Cir. 1975), in which the court affirmed a judgment that the Superintendent of Attica Prison was personally liable because he read two reports and approved the unconstitutional disciplinary action in question. There is no allegation here that Coughlin received an official report containing allegations of unconstitutional violations upon which he failed to act or which on appeal he affirmed. Accordingly, the complaint is dismissed with regard to Coughlin.

■ The complaint charges that Kuhlmann failed to "properly train or supervise his correctional officers," failed to "set firm rules governing the conduct" of Garrido's disciplinary hearing, and failed to "properly look into" the hearing.[2] "The failure to supervise ... [if] so severe as to reach the level of 'gross negligence' or 'deliberate indifference' to the deprivation

---

1. Complaint at ¶ B (Oct. 7, 1986).

2. Complaint at ¶ B.

of plaintiff's constitutional rights," suffices to state a cause of action under § 1983. *Owens v. Haas*, 601 F.2d 1242, 1247 (2d Cir.), *cert. denied*, 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979). Mere failure to supervise does not state a cause of action. *Id.* In this case, Garrido has alleged that Kuhlmann is responsible for the policies that led to the constitutional violations claimed. If that allegation were proven, Kuhlmann could be held personally liable. Accordingly, his motion to dismiss on the ground of insufficient personal involvement must be denied. However, for the reasons discussed below, the complaint against him is dismissed for failure to state a claim.

## II. DUE PROCESS

The complaint alleges that Kayser and Smith intentionally and maliciously conspired to file a false misbehavior report in order to trigger plaintiff's confinement in SHU and subsequent transfer, and to inflict mental pain and suffering and loss of wages in violation of his Eighth and Fourteenth Amendment rights. Defendants assert that these allegations do not implicate constitutional rights.

In *Freeman v. Rideout*, 808 F.2d 949, 950 (2d Cir.1986), *cert. denied*, — U.S. ——, 108 S.Ct. 1273, 99 L.Ed.2d 484 (1988), the Second Circuit rejected the contention that the filing of unfounded charges is *per se* a constitutional violation. The court stated:

> There appears to be a confusion between the existence of a constitutionally protected right, and the deprivation of that right without procedural safeguards or due process. The constitutionally protected interest in this case is the right of liberty.
>
> The prison inmate has no constitutionally guaranteed immunity from being falsely accused of conduct which may result in the deprivation of a protected liberty interest. The plaintiff, as all other prison inmates, has the right not to be deprived of a protected liberty interest without due process of law.

*Id.* at 951. Because the plaintiff was afforded a hearing and an opportunity to rebut the charges against him, the court concluded that the filing of unfounded charges did not give rise to a *per se* constitutional violation. *Id.* at 953.

"The filing of false disciplinary charges may support a claim under § 1983 where the accusation infringed on an inmate's substantive constitutional rights." *Anderson v. Sullivan*, 702 F.Supp. 424, 427 (S.D.N.Y.1988). In *Franco v. Kelly*, 854 F.2d 584, 589–90 (2d Cir.1988), for instance, the court held that an inmate stated a cause of action under § 1983 by alleging that correction officers filed a false misbehavior report against him in retaliation for his cooperation with a state investigation of alleged inmate abuse at the prison. The court held that the allegation implicated the inmate's "broader [substantive] right to petition government for redress of grievances, as guaranteed by the First and Fourteenth Amendments." *Id.* at 589 (citations omitted). *See also Sprouse v. Babcock*, 870 F.2d 450, 462 (8th Cir.1989) (holding that the "filing of a disciplinary charge against [an inmate], although otherwise not actionable under Section 1983, is actionable ... if done in retaliation for his having filed a grievance pursuant to established procedures.")

This case is distinguishable from *Franco* because the allegation that Kayser and Smith intentionally filed a false misbehavior report is not connected to any substantive constitutional right. Garrido alleges only that he had a verbal confrontation with Kayser regarding Kayser's allegedly abusive treatment of another inmate and that Kayser then falsely accused him of assault. While there is a claim of retaliation here as in *Franco*, it was not for exercise of Garrido's First Amendment rights; rather, the alleged retaliation arose out of a verbal confrontation. Moreover, in *Franco* plaintiff alleged a pattern of false disciplinary actions taken against him in retaliation for his cooperation with a government inquiry; in the case at hand, the complaint concerns an isolated incident of personal enmity. Accordingly, there is no substantive constitutional violation.

The question remains whether Garrido has alleged any violation of his right to due process.

■ The complaint does not allege what due process rights were violated. In determining whether the defendant's actions implicated due process rights the first question is what process was due to Garrido before he was placed in temporary confinement in SHU prior to his hearing. The law in this circuit is that interim confinement in SHU pending disciplinary hearings is administrative, not punitive. *Bolden v. Alston,* 810 F.2d 353, 357 n. 3 (2d Cir.), *cert. denied,* 484 U.S. 896, 108 S.Ct. 229, 98 L.Ed.2d 188 (1987). Even where state statutes create a liberty interest in remaining in the general prison population, an inmate who is to be confined for administrative reasons is entitled only to minimal due process rights before confinement, namely, "some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation." *Hewitt v. Helms,* 459 U.S. 460, 476, 103 S.Ct. 864, 873, 74 L.Ed.2d 675 (1983). The Court of Appeals has held that New York state has created a protected liberty interest in remaining free from involuntary protective custody in SHU. *Matiyn v. Henderson,* 841 F.2d 31, 35 (2d Cir.), *cert. denied,* — U.S. ——, 108 S.Ct. 2876, 101 L.Ed.2d 911 (1988). Accordingly, under *Hewitt* Garrido was entitled to be informed of the charges against him and to present his views before being confined in SHU. The record does not demonstrate whether or not this happened.

■ However, even if defendants did not inform Garrido of the charges or afford him an opportunity to respond, defendants may be protected by qualified immunity on this claim. State officials are generally shielded from civil damages if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

In *Matiyn v. Henderson,* the Second Circuit held in nearly identical circumstances that prison officials were protected by qualified immunity from a § 1983 action challenging their decision to confine an inmate in SHU without notice and an opportunity to present his views. 841 F.2d at 36–37. The *Matiyn* court stated: "[U]ntil now there has been no judicial decision or interpretation of the [relevant] regulations that could have guided the actions of prison officials." *Id.* at 36. Because defendants confined Garrido in SHU in 1986, two years before *Matiyn* was decided, they are entitled to the qualified immunity accorded the *Matiyn* defendants.

■ The complaint does not specify any procedural defect in Garrido's disciplinary hearing. He requested and was assigned an assistant to help him prepare for the hearing. The only witness he requested testified. With regard to the timeliness of the hearing, N.Y.Comp.Codes R. & Regs. title 7, § 251–5.1 (1986) states:

> (a) Where an inmate is confined pending a disciplinary hearing or superintendent's hearing, the hearing must be commenced as soon as is reasonably practicable following the inmate's initial confinement pending said … hearing, but, in no event may it be commenced beyond seven days of said confinement without authorization of the commissioner or his designee.
>
> (b) The … hearing must be completed within 14 days following the writing of the misbehavior report unless otherwise authorized by the commissioner or his designee.

Officer Smith filed the misbehavior report on January 20, 1986 and Garrido was confined in SHU on that evening; Garrido's hearing commenced and adjourned five days later in compliance with § 251–5.1(a). Ten days later, on February 4, 1986, Garrido was released and the charges dismissed because the Superintendent had been unable to contact Kayser and Smith and thus the hearing could not be completed within fourteen days pursuant to § 251–5.1(b).[3]

---

**3.** Although Garrido alleges that he was confined

for seventeen rather than fourteen days, this is

In sum, there was no due process violation in Garrido's hearing or temporary confinement in SHU.

 Garrido's constitutional rights were not violated by his subsequent transfer to another facility. An inmate has no constitutional right to remain in a particular facility "absent some right or justifiable expectation rooted in state law that he will not be transferred except for misbehavior or upon the occurrence of other specified events." *Montanye v. Haymes,* 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976); *Sher v. Coughlin,* 739 F.2d 77, 80 (2d Cir.1984). Moreover, New York law does not limit the Commissioner's power to transfer inmates. *Matiyn v. Henderson,* 841 F.2d 31, 34 (2d Cir.1988).

### III. CRUEL AND UNUSUAL PUNISHMENT

Garrido fails to specify the nature of the alleged Eighth Amendment violations. His complaint alleges only that he lost wages and suffered a decrease in pay as well as mental and emotional harm as a result of his confinement in SHU and subsequent transfer to Clinton Correctional Facility. The Eighth Amendment ban against cruel and unusual punishment bars punishments

> which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain," *Gregg v. Georgia,* [428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976),] or are grossly disproportionate to the severity of the crime. Among "unnecessary and wanton" inflictions of pain are those that are "totally without penological justification." *Gregg v. Georgia, supra,* at 183 [96 S.Ct. at 2929]; *Estelle v. Gamble,* 429 U.S. 97, 103 [97 S.Ct. 285, 290, 50 L.Ed.2d 251] (1976).

*Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981). Conditions that deprive inmates of "the minimal civilized measure of life's necessities" may also constitute cruel and unusual punishment. *Id.*

---

not a material issue because even if true, the extra two days of confinement would not, under

 Reduction of wages does not constitute cruel and unusual punishment, at least where, as here, there are no allegations that the inmate was deprived of minimal necessities as a result. *Flowers v. Fauver,* 683 F.Supp. 981, 985–86 (D.N.J.1988) (inmate failed to state cause of action under Eighth Amendment where he alleged deprivation of prison labor wages following forced lay-in due to employment-related injury). Similarly, the emotional harm Garrido allegedly suffered as a result of confinement in SHU does not represent a "wanton or unnecessary infliction of pain" nor was it "grossly disproportionate" to the severity of the infraction charged. As discussed above, the confinement that resulted from the disciplinary charges was not unconstitutionally imposed. Moreover, Garrido does not allege that the specific conditions of that confinement were cruel or unusual; Garrido merely asserts that he suffered emotional harm as a result of the confinement.

 Even if a prison transfer is intended to be punitive such action does not constitute cruel or unusual punishment within the meaning of the Eighth Amendment. *Gatson v. Coughlin,* 679 F.Supp. 270, 273 (W.D.N.Y.1988); *see also Gomez v. Coughlin,* 685 F.Supp. 1291, 1298 (S.D.N.Y.1988) (holding transfer to a maximum security prison not cruel and unusual punishment). In sum, none of Garrido's alleged injuries are constitutionally cruel and unusual punishment under these circumstances.

\*　　\*　　\*　　\*　　\*　　\*

The complaint is dismissed without prejudice to Garrido's right to pursue his claims in state court.

It is so ordered.

---

the circumstances here, constitute cruel and unusual punishment or a violation of due process.