Ronald JACKSON, Plaintiff,

v.

The NEW YORK DEPARTMENT OF CORRECTIONAL SERVICES, Richard Stanulwich, Correctional Counselor, C. Coefield, Correctional Officer, John Doe, (Lieutenant O'Donnell), Correctional Officer, Defendants.

No. 94 Civ. 8731(HB).

United States District Court,
S.D. New York.

Feb. 11, 1998.

Ronald Jackson, Attica, NY, pro se.

### OPINION AND ORDER

BAER, District Judge.

Plaintiff *pro se* Ronald Jackson ("Jackson") filed this action pursuant to 42 U.S.C. § 1983 against the defendants New York State Department of Correctional Services ("DOCS"), and three individual defendants, current and former DOCS employees, in connection with his placement in keeplock for thirteen days while incarcerated at Green Haven Correctional Facility and his subsequent transfer out of Green Haven. Specifically, Jackson claims that his Fifth, Sixth, Eighth and Fourteenth Amendment rights were violated. By Opinion and Order dated September 7, 1995 I dismissed Jackson's § 1983 claim against DOCS for lack of subject matter jurisdiction.[1] Defendants now move for summary

judgment on the complaint. For the reasons set forth below, defendants' motion is granted.

### Background

In December 1989, Jackson was transferred from Clinton Correctional facility to Green Haven Correctional Facility due to an altercation with a fellow inmate, Darrow Holmes ("Holmes"). Because of this incident, DOCS classified Jackson and Holmes as "enemies," signifying that they should be kept in separate prisons. Compl. at ¶ 11; Affidavit of Sarita Havas–Lovelace ¶ 7. Despite this classification, Holmes was transferred to Green Haven in May 1994. In June, 1994, when Jackson learned of the transfer, he notified several correctional employees, including his corrections' counselor, defendant Richard Stanulwich, of Holmes' transfer. Compl. ¶¶ 13–20.

In early June, 1994, Jackson met with Correctional Counselor Stanulwich to discuss Holmes' incarceration at Green Haven, at which time Jackson requested that Holmes be transferred or placed in protective custody. Compl. ¶ 19. According to Stanulwich, plaintiff threatened Holmes' life during this meeting. Affidavit of Richard Stanulwich ¶¶ 15–18. Shortly thereafter, a prison sergeant advised Jackson to voluntarily place himself in protective keeplock, but Jackson refused. Compl. ¶ 20. The matter was referred to and investigated by Deputy Superintendent Coefield. Stanulwich Aff. ¶ 20; Compl. ¶ 25.

On June 18, 1994, prison officials placed Jackson in keeplock. Affidavit of John Dolan, ¶ 11. Two days later Stanulwich issued a misbehavior report regarding Jackson's alleged threats on Holmes' life. Stanulwich Aff. ¶ 22. According to plaintiff, on June 20, Stanulwich met with Jackson and explained that he authorized Jackson's keeplock status for Jackson's own protection. Jackson alleges that Stanulwich told him that Holmes could not be transferred because he had enemies all over the state, and that Stanulwich was going to issue a false misbehavior report so that Jackson could be transferred.[2]

---

1. All of plaintiffs' claims against the individual defendants and plaintiff's state law false imprisonment claim against DOCS remained after my decision.

2. Plaintiff had no other enemies in any other correctional facility. However, Holmes had at

On June 23, 1994, according to plaintiff, prison officials attempted to conduct a hearing on Jackson's keeplock status; however, the hearing was adjourned because plaintiff requested that one of the hearing officers recuse himself due to his involvement with the investigation. Compl. ¶ 26. On June 24, 1994, prison officials made a second attempt to conduct a hearing, which was again adjourned because plaintiff's witnesses were not available. Stanulwich Aff. ¶ 24; Compl. ¶ 29. According to plaintiff, six days later, on June 30, 1994, a third hearing attempt was made but plaintiff asked that the hearing officer, defendant O'Donnell, recuse himself from the hearing. Compl. ¶ 30. On July 1, 1994, after spending a total of thirteen days in keeplock, Jackson was transferred to Sullivan Correctional Facility. Compl. ¶ 31; Stanulwich Aff. ¶ 25. The disciplinary hearing was therefore never concluded, and the misbehavior report was dropped and the disciplinary allegation against plaintiff were expunged from his record. Stanulwich Aff. ¶ 28.

## Discussion

While the procedure employed by DOCS and its personnel to separate "enemies" could hardly be characterized as a testament to the computer age, neither is the resulting anxiety nor the hardship to the plaintiff the standard for summary judgment. Under Rule 56(c) of the Federal Rules of Civil Procedure, a motion for summary judgment shall be granted where the moving party establishes that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Fed. R.Civ.P. 56(c). A dispute regarding a material fact is genuine " 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.) (quoting *Anderson*, 477 U.S. at 248), *cert. denied*, 506 U.S. 965, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992).

## I. The Disciplinary Process

Plaintiff asserts various claims with respect to his disciplinary process. Specifically plaintiff asserts that his hearing was not completed in a reasonable time, that his misbehavior report was falsified, that he was denied the to right to call witnesses at his hearing, that he was improperly confined on a Saturday and that he was not provided with an inmate assistant in violation of prison regulations contained in 7 NYCRR and in violation of the due process clause. Compl. ¶ 36. However, plaintiff's claims must be dismissed on the ground that he does not have a protected liberty interest in remaining in the general prison population under *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

■ In procedural due process cases, the threshold analysis is whether there is a liberty or property interest at stake. *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989). There are two sources for such liberty interests: the Due Process clause and state statutes and regulations. The Supreme Court held in *Sandin v. Conner* that neither the Due Process clause nor relevant state prison regulations created a liberty interest that entitled the plaintiff to redress where the plaintiff was subject to disciplinary segregation for 30 days.

The Court stated in *Sandin* that the States may under certain circumstances create a liberty interest protected by the Due Process clause, but such an interest will "generally [be] limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, ..., nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 2299 (citations omitted). The court went on to state that discipline by prison officials in response to a wide range of misconduct falls within the acceptable parameters of the

least 10 enemies within the Department of Correctional Services. Havas Aff. ¶¶ 9–10. Thus, it would have been difficult to transfer Holmes out

of Green Haven because there were only a few maximum security prisons and Holmes had so many enemies. Havas Aff. ¶ 9.

sentence imposed by a court of law. In particular, the court held that the plaintiffs segregated confinement ("SHU") for 30 days, even though he was not allowed to call witnesses at his disciplinary hearing, "did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Id.* at 2301.

In order to prevail on his due process claim, plaintiff must establish both that the confinement or restraint creates an " 'atypical and significant hardship' under Sandin, and that the state has granted its inmates, by regulation or by statute, a protected liberty interest in remaining free from that confinement or restraint." *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir.1996). Plaintiff fails to satisfy the first part of this test. Plaintiffs confinement in keeplock for 13 days, does not amount to an atypical and significant hardship under *Sandin* as a matter of law.[3] *See Frazeri*, 81 F.3d at 317 (confinement for 12 days in SHU while awaiting disciplinary hearing did not implicate a protected liberty interest); *Schmelzer v. Norfleet*, 903 F.Supp. 632 (S.D.N.Y.1995) (although inmate was placed in keeplock without misbehavior report having been filed and without hearing having been scheduled, 11–day confinement did not implicate a protected liberty interest). Indeed, the post-*Sandin* decisions in this Circuit are unanimous that keeplock or SHU confinement of 60 days of less in New York prisons is not an "atypical or significant hardship." *Duncan v. Keane*, 1996 WL 511573, at *3 (S.D.N.Y. Aug.22, 1996) (Baer, J.) (collecting cases).

## II. *Eighth Amendment Claim*

Plaintiff brings an Eighth Amendment claim, alleging that defendants' conduct in exposing him to Holmes and then placing him in keeplock for 13 days constituted cruel and unusual punishment. To prevail on a claim that the conditions of his confinement constitute cruel and unusual punishment, a plaintiff must satisfy an objective and a subjective test. Under the objective test a plaintiff must demonstrate that the conditions of his confinement result in an "unquestioned and serious deprivations of human needs." The subjective test requires a plaintiff to show that the defendant prison officials imposed those conditions with deliberate indifference. *Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir.1996). In *Anderson v. Coughlin*, 757 F.2d 33, 34 (2d Cir.1985), the Second Circuit held that the conditions of SHU in several New York state prisons did not violate the Eighth Amendment. Here, the plaintiff did not allege any treatment that would constitute a violation of the Eighth Amendment. He simply alleges that he was placed in keeplock for 13 days. He does not allege any specific ways in which he was deprived of a serious human need, such as that he was deprived of the right to exercise. *Cf. Davidson v. Coughlin*, 968 F.Supp. 121 (S.D.N.Y.1997). The mere placement in keeplock for 13 days does not constitute an Eight Amendment violation.

Nor does the accidental placement of Holmes in Green Haven with the plaintiff constitute an Eighth Amendment violation. Plaintiff himself alleges that the fact that he and Holmes were placed in the same facility was a mistake, Compl. ¶ 36, p. 11. He therefore cannot show deliberate indifference as a matter of law. *See Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir.1996) (while prison officials must take reasonable measures to guarantee inmates safety, to state an Eight Amendment claim prisoner must allege deliberate indifference); *Branch*

---

3. Plaintiff's allegation that his misbehavior report was falsified also fails. Plaintiff contends that Stanulwich wrote the misbehavior report to use plaintiff as a "scapegoat" because of the prison's error in placing Holmes and plaintiff in the same prison. Compl. ¶ 36. While a prisoner's constitutional rights are not violated solely by being falsely accused of misconduct, "false allegations that immediately interfere with substantive constitutional rights do violate a prisoner's constitutional rights." *Taylor v. Sullivan*, 980 F.Supp. 697, 704 (S.D.N.Y.1997) (citing *Bod-*

*die v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997)). Thus, absent any facts showing that such a false disciplinary report actually deprived plaintiff of a liberty interest, no constitutional issue is raised. *Wright v. Santoro*, 714 F.Supp. 665, 667 (S.D.N.Y.), *aff'd*, 891 F.2d 278 (2d Cir. 1989). Here, since Jackson had no liberty interest in being free from keeplock for 13 days, proof at trial that the report was false, would be unavailing. *See Taylor*, 980 F.Supp. at 705 n. 13 (distinguishing revocation of parole from disciplinary confinement of a prison inmate).

*v. Coughlin,* 1987 WL 34257 (S.D.N.Y.1987) (although prisoner has a right to be protected from his known enemies, in order to prevail on Eighth Amendment claim, there must be some allegation of deliberate or callous indifference). Accordingly, plaintiff's Eight Amendment claims must fail.

### III. *Plaintiff's Transfer*

 Plaintiff also alleges that his transfer violated his Due Process and Eighth Amendment rights. However, this claim must be dismissed because there is no constitutional right to be free from inter-prison transfers. It is well established that state prisoners have no liberty interest in remaining at a certain facility absent a state law or regulation conditioning such transfer on proof of misbehavior or other specified events, and the due process clause is therefore not implicated by a transfer. *Matiyn v. Henderson,* 841 F.2d 31, 34 (2d Cir.), *cert. denied,* 487 U.S. 1220, 108 S.Ct. 2876, 101 L.Ed.2d 911 (1988); *Garrido v. Coughlin,* 716 F.Supp. 98, 102 (S.D.N.Y.1989). Plaintiff had no liberty interest in remaining at Green Haven since New York law does not place conditions on inter-prison transfers. *Id.*

 Moreover, plaintiff's transfer, even if intended to be punitive, does not constitute cruel or unusual punishment unless it is made completely without penological justification. *Green v. Wing,* 1996 WL 383138 (S.D.N.Y. July 9, 1996); *See also, Garrido,* 716 F.Supp. at 103. Here, it is undisputed that plaintiff and Holmes were known enemies and could not be at the same facility. Since Holmes had at least 10 enemies within the Department of Correctional Services, it would have been difficult to transfer Holmes out of Green Haven because there were only a few maximum security prisons and Holmes had so many enemies. Accordingly, there was clearly a penological justification for plaintiffs transfer. Accordingly, plaintiff's claims with respect to his transfer must be dismissed as a matter of law.

### IV. *False Imprisonment Claim*

Plaintiff alleges a state law false imprisonment claim with respect to his placement in keeplock for 13 days. Compl. ¶ 36, p. 14. As an initial matter, to the extent plaintiff brings this pendent state law claim against the individual defendants, it must be dismissed because under New York Correction Law § 24(1), an officer or employee of DOCS may not be sued in his personal capacity. *See Baker v. Coughlin,* 77 F.3d 12 (2d Cir. 1996). Thus only DOCS is an appropriate defendant with respect to this claim.

 A claim of false imprisonment requires four elements: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not privileged. *Gittens v. State of New York,* 132 Misc.2d 399, 504 N.Y.S.2d 969, 971 (N.Y.Ct.Cl.1986). A prisoner can succeed on a false imprisonment claim only where he has "sufficiently pleaded that he had been subjected to punitive segregation for no legitimate reason and without the rudimentary protections of due process." *Id.* at 972. Here, I find that plaintiff can prove no set of facts which would entitle him to relief in his favor. Plaintiff was placed in keeplock due to a threat to his own life and the life of other inmates based on the placement of Holmes in Green Haven. He was there for a comparatively brief period of time for a legitimate purpose—his safety and the safety of others. Plaintiff was not denied the rudimentary protections of due process. Plaintiff admits that the prison attempted to hold a hearing on his disciplinary charges, but that the hearing was adjourned several times due to his requests to call witnesses and to recuse the hearing officer. The hearing was never completed due to his subsequent transfer and as a result the charges were completely expunged from his record. Accordingly, plaintiffs false imprisonment claim must be dismissed.

### Conclusion

For the foregoing reasons, defendants' motion for summary judgment is granted. The Clerk of the Court is directed to close this case.

**SO ORDERED.**