Lavon RICHARDSON, Plaintiff,

v.

C.O. James HILLMAN; C.O. Richard Deacon; Lt. Micheal Capra, Lt. Garetti; Dep. Supt. Robert Ercole; Dep. Supt. Ada Perez; Supt. William Mazzuca; Frank Bigit, I.G. Investigator; Commissioner Goord, sued in their personal and individual capacities, Defendants.

No. 00 CIV. 8995(CM).

United States District Court, S.D. New York.

April 18, 2002.

Lavon Richardson, Attica, NY, Pro se.

## MEMORANDUM DECISION AND OR-DER GRANTING DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

MCMAHON, District Judge.

Pursuant to 42 U.S.C. § 1983, plaintiff, Lavon Richardson, an inmate at the Attica Correctional Facility, brings this action pro se, alleging the violation of his constitutional rights in September 1999 by various officials at the Green Haven Correctional Facility[1] and the Fishkill Correctional Facility,[2] as well as by the New York State Department of Correctional Services.[3]

All Defendants, with the exception of Garetti, filed a motion to dismiss in accordance with the Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The Attorney General contends that Garetti was never served, since he has not asked for representation. The docket in the case shows that Garetti waived personal service of process pursuant to Fed.R.Civ.P. 4(d) on July 16, 2001. This means that he has been served by mail, and is currently in default.

While the motion to dismiss was sub judice, the United States Supreme Court turned Second Circuit law on exhaustion of administrative remedies by prisoners on its head. It overruled this Circuit's conclusion that there are exemptions to the Prison Litigation Reform Act's requirement that every claim asserted by a prisoner must first be grieved administratively. *Porter v. Nussle*, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). Because the complaint does not allege that Plaintiff has exhausted his administrative remedies, it must be dismissed in its entirety.[4] Moreover, even if the claims against defendants Ercole, Goord and Bigit had been exhausted, they would have to be dismissed on motion, because Plaintiff sets forth no cognizable basis for holding them liable. Thus, for the reasons stated below, the motion is granted and the complaint is

---

**1.** Sergeant James Hillman and Corrections Officer Richard Deacon

**2.** Lieutenant Michael Capra, Lieutenant Garetti, Deputy Superintendent Ada Perez, Deputy Superintendent Robert Ercole and Superintendent William Mazzuca.

**3.** Investigator Frank Bigit and Commissioner Glenn Goord

**4.** Courts have interpreted the exhaustion requirement to mean that, if there are multiple claims asserted in a single action, each individual claim must have been administratively exhausted prior to submitting the entire complaint. *See Neal v. Goord*, 267 F.3d 116 (2d Cir.2001).

dismissed as against all Defendants. The dismissal is with prejudice as to defendants Ercole, Goord and Bigit, and without prejudice as to the remaining Defendants.

## ALLEGED FACTS

As is true with many pro se complaints, the actual pleading filed by Richardson is spare. He has fleshed out his allegations with a letter to the Court, which I am prepared to treat as a pre-answer amended complaint filed as of right pursuant to Fed.R.Civ.P. 15(a). Reading the allegations of these two documents most favorably to Plaintiff, he alleges the following:

Before breakfast on September 20, 1999, at Green Haven Correctional Facility, defendants Deacon and Hillman verbally harassed Richardson by telling him that he had to cut his "locks" (hair) or else he would be prohibited from going to the commissary. (*See* Pl.'s Am. Compl. § IV). After breakfast, Richardson requested and was issued a pass by Hillman to go to the hospital, where he worked as an inmate health aide. When he arrived at the hospital, two officers told Richardson to be careful because Hillman and Deacon were "trying to trap [him] off" by continually calling the hospital to check on Richardson's whereabouts. (*See* Pl.'s Am. Compl., § IV). Plaintiff was given permission to go the commissary, but after making a purchase was "keep-locked" by Hillman and Deacon.[5] (*See id.*) Hillman then

grabbed Richardson by his hair and escorted him back to his cell. (*See id.*)

The following day, Deacon tossed a picture into Richardson's cell. The photograph was a depiction of a lynch mob hanging three black men from a tree. Deacon and Hillman then told Richardson that he was next. (*See id.*) Richardson filed a grievance, and Investigator Bigit was assigned to examine the allegations. On September 24, 1999, four days after Richardson's initial harassment, Investigator Bigit had Richardson transferred to the Fishkill Correctional Facility, away from Hillman and Deacon.[6]

Once at Fishkill, Richardson was placed in a Special Housing Unit (SHU) for 30 days as a result of a misbehavior report that Hillman had filed back at Green Haven.[7] (*See* Pl.'s Am. Compl., § IV; *see also* Letter from Richardson to Judge McMahon 09/10/01). Officer Garetti told Richardson that because of the report filed against officers Hillman and Deacon, Richardson was going to be receiving the maximum penalty in SHU. (*See* Pl.'s Am. Compl., § IV)

On January 3, 2000, Richardson was accused of participating in a work stoppage at Fishkill. (*See id.*). Although Richardson's program had been cancelled, the officers at Fishkill were attempting to send inmates to the program due to a rumor of a work stoppage. Gang members in Richardson's unit threatened to harm anyone who went to the program. (*See* Letter

---

**5.** "Keep-lock" is a prison term that means to confine a prisoner to his/her cell. It is a step down from solitary confinement, but the prisoner is not allowed out of the cell for any reason.

**6.** Investigator Bigit informed Richardson that he should not have been placed in a maximum-security prison and would therefore be transferred to a medium security prison. (*See* Letter from Richardson to Judge McMahon of 09/10/01).

**7.** In a letter to Judge McMahon, Richardson mentions appealing a Tier II hearing and filing a separate complaint to Goord, Mazzuca, Bigit and Ercole. Plaintiff had not mentioned this appeal in either his original complaint or the amended complaint. It is unclear when the appeal and filing of the complaint occurred. (*See* Letter from Richardson to Judge McMahon of 11/07/01).

From Richardson to Judge McMahon 09/10/01). Richardson notified his A-officer and defendant Ercole of the threats he had received. Ercole then sent Richardson to see defendant Capra. (*See* Pl.'s Am. Compl., § IV). Capra informed Richardson that he was aware of what had happened between Richardson and defendants Hillman and Deacon at Greenhaven; Capra also told Richardson that Hillman was being promoted to sergeant. Capra sentenced Richardson to time in SHU because of an alleged confession by Richardson that he assisted in the work stoppage. (*See* Pl.'s Am. Compl., § IV.) Richardson contends that this confession was falsified. (*See* Letter From Richardson to Judge McMahon 09/10/01.) In addition, Capra also filed a misbehavior report on Richardson as a result of "finding" a Greenhaven nurse's address in his possession. Richardson disclaims any knowledge of having this address; rather, he claims that the address was planted on him. (*See* Pl.'s Am. Compl., § IV.)

On January 12, 2000, a Tier III hearing was held to address Capra's misbehavior report on Richardson. Following the hearing, defendant Perez issued Richardson a penalty of 365 days in SHU.[8] (*See* Pl.'s Am. Compl.). Perez, who was the program deputy for Richardson,[9] discussed the outcome of Richardson's disciplinary hearing with Capra. (*See* Letter from Richardson to Judge McMahon of 09/10/01.) In addition to the penalty issued by Perez, defendant Mazzuca's appointed hearing officer sentenced Richardson to an additional 90 days in SHU. (*See* Pl.'s Am. Compl. § IV–A.)

Richardson alleged that Investigator Bigit expressed to him that everything would be "all right" but then never responded to Richardson's letters following his transfer to Fishkill. Richardson also alleged that Bigit sent an officer from the Inspector General's office to Fishkill who instructed Richardson not to file any charges against Hillman and Deacon because the officers had already apologized and it would only make the department look bad.

## DISCUSSION

### I. STANDARD OF REVIEW

Rule 12(b) of the Federal Rules of Civil Procedure provides for dismissal of a complaint for lack of subject matter jurisdiction or that fails to state a claim upon which relief can be granted. The standard of review on a motion to dismiss is heavily weighted in favor of the plaintiff. The Court is required to read a complaint generously, drawing all reasonable inferences from the complaint's allegations. *California Motor Transp. Co. v. Trucking Unlimited,* 404 U.S. 508, 515, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). "In ruling on a motion to dismiss . . . the court is required to accept the material facts alleged in the complaint as true." *Frasier v. General Elec. Co.,* 930 F.2d 1004, 1007 (2d Cir. 1991). The Court must deny the motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Stewart v. Jackson & Nash,* 976 F.2d 86, 87 (2d Cir.1992) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2

---

8. In the Letter from Richardson, dated Sept. 10, 2001, Richardson states that he was given 180 days in SHU as opposed to the 365 days claimed in his complaint. (*See* Letter from Richardson to Judge McMahon of 09/10/01.) Since this is a motion to dismiss, all material facts alleged in the complaint must be accepted as true.

9. Perez was the program deputy for the work program where Richardson worked the same program for which Richardson was accused of organizing the work stoppage.

L.Ed.2d 80 (1957)). Additionally, the Plaintiff has brought this action as a pro se litigant, warranting the court to construe the complaint liberally, such that the strongest possible argument is raised. *Soto v. Walker,* 44 F.3d 169, 173 (2d Cir. 1995).

### A. GARETTI'S SERVICE OF PROCESS

■ The Attorney General claims, on information and belief, that Lt. Garetti was not properly served in accordance Rule 4(m) of the Federal Rules of Civil Procedure. The AG bases this statement on the fact that that office has not received a request for representation from defendant Garetti. (Def.'s Mem. of Law in Supp. of Mot. to Dismiss at 2, n. 1.) However, Lt. Garetti obviously received the pleading in the mail, since he returned the waiver of personal service form for the summons and complaint. See Court's Docket at #10. Therefore, as provided by Fed. R.Civ.P. 4(d)(4), the action is proceeding as against Lt. Garetti as though process had been personally served.[10]

Lt. Garetti failed to answer Plaintiff's complaint within 60 days of being sent the request for waiver of service of process, as required by Fed.R.Civ.P. 4(d)(3). However, because the claim against Garetti has not been administratively exhausted (as explained below), Plaintiff is not entitled to default judgment against Garetti, and the claim must be dismissed (albeit without prejudice).

### B. Complaint against Capra, Garetti, Hillman and Deacon

■ In order for this court to hear a claim under § 1983, the right, privilege or immunity must be guaranteed by the constitution or federal law. 42 U.S.C. § 1983 (2001). The Second Circuit has held that a "prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." *Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir.1986). If, however, a plaintiff claims that the false report was filed in retaliation against him, then his constitutional rights are violated. *Franco v. Kelly,* 854 F.2d 584, 588–90 (2d Cir. 1988). Additionally, the Second Circuit has found racial slurs that intentionally inflict psychological pain implicate a constitutional right, as long as the pain is not *de minimis.* *Shabazz v. Pico,* 994 F.Supp. 460, 474 (S.D.N.Y.1998), *aff'd* 205 F.3d 1324 (2d Cir.2000).

The Prison Litigation Reform Act (PLRA) provides that "no action shall be brought with respect to prison conditions under § 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (2001). Until recently, the Second Circuit recognized certain exceptions to the exhaustion requirement, including excessive force and individualized retaliatory action claims, see, e.g., *Lawrence v. Goord,* 238 F.3d 182 (2d Cir.2001), (holding that these claims did not fall within the term "prison conditions" under 42 U.S.C. § 1997e(a), and therefore an inmate was not required to exhaust all administrative remedies before bringing an action under § 1983. *Lawrence,* 238 F.3d 182).

■ However, the Supreme Court recently overturned the Second Circuit's exceptions, in *Porter v. Nussle,* 534 U.S. 516,

---

**10.** The Attorney General could have avoided this embarrassment by checking the docket sheet.

122 S.Ct. 983, 152 L.Ed.2d 12 (2002). Noting that the Second Circuit had relied on a limited definition of the term "prison conditions"[11] to find exceptions to § 1997e(a), the Supreme Court found it more plausible that Congress had intended that term to apply to every aspect of a prisoner's life. The Court concluded that Congress "inserted 'prison conditions' into the exhaustion provision simply to make it clear that *preincarceration* claims f[e]ll outside § 1997e(a)." *Id.* at 991 (emphasis added). The Court then ruled definitively that the exhaustion requirement applied "to *all* inmate suits about prison life...whether they allege excessive force or some other wrong." *Id.* at 992 (emphasis added). Thus, prisoners must grieve or otherwise administratively exhaust any and all claims-including claims of retaliation, such as those asserted here-before bringing them to Court. For the most part, Richardson has not complied with this requirement.

### 1. Capra

■ Richardson claims that Capra submitted a report, based on a fabricated confession, accusing Richardson of assisting in a work stoppage and having a Greenhaven nurse's address on his person. In his complaint, Richardson alleges that Capra's report was filed in retaliation to his complaints against Hillman and Deacon. Capra's allegedly retaliatory report does implicate a constitutional right, and thus this claim cannot be dismissed under the rule of *Freeman v. Rideout.*

However, Richardson does not allege that he has exhausted his administrative remedies by grieving this allegedly retaliatory action. Before he can file a complaint

for an alleged "retaliatory" report, he must exhaust the administrative remedies that are available to him. While Plaintiff has had a Tier III hearing on Capra's report, Plaintiff does not allege that he grieved the filing of the charge by Capra. For this reason, Plaintiff's claim against Capra is dismissed. Since the claim is not time-barred at present, Plaintiff may replead it after he follows the prison's grievance procedure.

### 2. Garetti

■ Richardson has also claimed that Garetti "retaliated" against him by issuing him the maximum punishment in SHU because Richardson had filed a report against Hillman and Deacon. Reading Richardson's complaint in the light most favorable to him, the court could conclude that Garetti's actions were in fact retaliatory in nature. However, they are no longer exempt from the requirement of administrative exhaustion, and Plaintiff does not allege that he has grieved this allegation. The claim against Garetti must therefore be dismissed, again without prejudice to administrative exhaustion.

### 3. Hillman's False Report

■ On its face, Hillman's allegedly false report does not implicate any of Richardson's constitutional rights. The report was written in conjunction with the officers' issuance of keep-lock status, i.e. before Richardson made any complaint against the Correction Officers. Thus, I cannot infer that it was issued in retaliation for actions taken by Richardson. Accordingly, the claim against Hillman for the writing of a false report must be dismissed on the merits.

---

**11.** The Second Circuit had defined "prison conditions" as " 'circumstances affecting everyone in the area' rather than 'single or momentary matter[s], such as beatings...di-

rected at particular individuals.' " 534 U.S. 516, 122 S.Ct. 983, 987, 152 L.Ed.2d 12 (2002) (quoting *Nussle v. Willette,* 224 F.3d 95, 106 (2d Cir.2000)).

#### 4. Hillman's and Deacon's Alleged Harassment Claim

 The Plaintiff has alleged that defendants Hillman and Deacon harassed him by "keep-locking" him as a result of his long hair and in addition, by tossing into his cell a lynch mob photo, stating, "he was next." Plaintiff claims that he filed a complaint against Hillman and Deacon, and that Bigit was assigned to investigate the incident. Plaintiff does not plead any further facts related to this incident. Notably, Plaintiff also does not plead any facts tending to show that he exhausted his administrative remedies. While it is clear from the Complaint that Plaintiff complained to someone about this matter (hence the assignment of Bigit to investigate), I have no idea whether this comported with the prison's administrative grievance policy or not. In light of *Porter v. Nussle*, such facts must appear on the face of a Complaint.[12] Although the Complaint does implicate a constitutional right, it must be dismissed, albeit without prejudice, pending either administrative exhaustion or a restated pleading indicating that the claim has already been exhausted.

#### 5. Defendants Perez and Mazzuca

Plaintiff's claim against defendant Perez is premised on the fact that Perez was the officer responsible for issuing Plaintiff's sentence of 365 days in SHU following the Tier III hearing for Plaintiff's participation in the work stoppage and for having a nurse's address in his possession. The action against defendant Mazzuca is derived from the same Tier III hearing in which Mazzuca gave Richardson an additional 90 days in SHU.

 A mere issuance of penalties based upon a false misbehavior report would not rise to the level of unconstitutional conduct unless the penalty was an "atypical and significant hardship." *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). The Second Circuit, in interpreting the *Sandin* standard, has found that the duration of the SHU confinement must be carefully considered when determining the atypicality of a penalty. *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir.2000) (holding that ·305 days in SHU is a "sufficient departure...to require procedural due process protections..."). Furthermore, the Second Circuit has expounded the responsibility for issuing officers to include the entire period in SHU that a prisoner was confined, if the officer extended the confinement period to constitute an atypical penalty. *Sealey v. Giltner*, 197 F.3d 578, 587 (2d Cir.1999) (finding that an officer was responsible for the 101–day aggregate that a prisoner was confined even though he personally had only assigned the prisoner to 83 days in SHU). Where a penalty constitutes "atypical and significant hardship," the prisoner is entitled to the procedural protections "appropriate to the prison disciplinary hearing context." *Colon*, 215 F.3d at 232.

 Here, Plaintiff was issued 365 days in SHU by Perez and, shortly thereafter, an additional 90 days from Mazzuca. Although this duration may rise to an unconstitutional level, Plaintiff has not appealed, and thus has not administratively exhausted the issuance of the alleged "atypical and significant hardship" penalties. Therefore, these claims are also dismissed, again without prejudice, pending administrative exhaustion.

12. Ordinarily, the State would provide the Court with this information, but its motion to dismiss was filed before *Porter* was decided; thinking that *Lampf v. Goord* was still good law, the Attorney General does not discuss administrative exhaustion.

### B. COMPLAINT AGAINST ERCOLE, GOORD AND BIGIT

The claims against defendants Ercole, Goord and Bigit must also be dismissed for failure to exhaust, under *Porter v. Nussle.* However, it makes no sense to dismiss the claims against these Defendants without prejudice, because Plaintiff's allegations against them are insufficient to support a § 1983 claim. Therefore, I dismiss the claims against them with prejudice.

Courts have continually held that the doctrine of *respondeat superior* is not sufficient to maintain a § 1983 action. Rather, a showing of personal involvement by the defendant is required. *Lowrance v. Coughlin,* 862 F.Supp. 1090, 1101 (S.D.N.Y.1994); *see also Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985) (holding that an action against the state commissioner of corrections and the superintendent require "more than the linkage in the prison chain of command"); *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (finding no personal involvement where a general complaint letter to the commissioner did not put him on actual or constructive notice of violation).

The Second Circuit, in *Sealey v. Giltner,* 116 F.3d 47 (2d Cir.1997), set forth four situations in which a supervisory official would be liable for constitutional violations: (1) if the official directly participated in the alleged act; (2) if, after learning of wrongful conduct, the official failed to remedy the situation; (3) if the official created a policy or custom "fostering the violation, or allowed the custom or policy to continue after learning of it;" or (4) the official was grossly negligent in supervising subordinates who committed the wrongful acts or by exhibiting deliberate indifference by failing to act on information indicating the occurrence of unconstitutional acts. *Sealey,* 116 F.3d at 51; *See also Colon v. Coughlin,* 58 F.3d 865, 874 (2d Cir.1995). Mere failure to supervise does not state a cause of action. *Garrido v. Coughlin,* 716 F.Supp. 98, 101 (S.D.N.Y. 1989) (finding that allegations of a supervisor's failure to properly train and set policies for officers that led to constitutional violations were sufficient to maintain a § 1983 action but that allegations of simply ignoring a letter of protest were insufficient to hold a supervisor liable). However, the Second Circuit has held that if one has actual or constructive notice of unconstitutional practices and has demonstrated gross negligence or deliberate indifference by failing to act, this is sufficient to satisfy a personal involvement requirement. *See Al–Jundi v. Estate of Rockefeller,* 885 F.2d 1060, 1066 (2d Cir.1989).

#### 1. Defendant Ercole

Defendant Ercole is the officer with whom Plaintiff first spoke regarding the gang threats during the work stoppage at Fishkill. Ercole sent Plaintiff to speak with Sergeant Capra for further assistance. This conversation is the only "participation" that Plaintiff has alleged on the part of Ercole. There are no allegations of direct participation in any wrongful conduct, gross negligence or any other acts that would be sufficient to conclude that Ercole could be personally involved in this action. Indeed, the actual Complaint does not contain any allegations at all against Ercole! Therefore the claim against him is dismissed with prejudice.

#### 2. Defendant Goord

Plaintiff has not set forth any facts that can be construed to personally involve Commissioner Goord. The only connection that Goord has to this case is his supervisory role over the entire State's Department of Correctional Services. He is not alleged to have participated in any

way in the disciplinary actions of which plaintiff complains. The law is clear that merely being a supervisor, absent a showing of any other involvement, is not sufficient to hold the individual liable. *Garrido,* 716 F.Supp. at 101. The claim against defendant Goord is also dismissed with prejudice for failure to allege personal involvement.

3. Defendant Bigit

 Defendant Bigit is the inspector who responded to Plaintiff's initial complaint against Hillman and Deacon. Plaintiff claims that Bigit investigated the allegations, was responsible for having him transferred to the Fishkill facility, informed him "everything would be alright" and subsequently disappeared, ignoring any further correspondence that Plaintiff attempted with him. (Pl.'s Am. Compl. IV.) There is no allegation that Bigit, acting in a supervisory role, learned of wrongful conduct and failed to remedy the situation. Indeed, he did remedy Plaintiff's situation by having him transferred to a different institution, where Hillman and Deacon did not work and could not harass him.

Clearly, the fact that Bigit did not respond to Plaintiff's follow-up letters is an insufficient basis for personal liability under § 1983. *See Shepherd v. Sanchez,* 2000 WL 1010829 (S.D.N.Y.2000), *aff'd in part, vacated in part,* 2001 WL 1398404, 27 Fed.Appx. 31 (2d Cir.2001) (affirming the District Court's holding that letters to the Warden are insufficient to establish personal liability); *see also Cepeda v. Coughlin,* 1995 WL 23566 (S.D.N.Y.1995). But that is all that Plaintiff alleges against him. Thus, the claim against Bigit is dismissed with prejudice.

## CONCLUSION

For the aforementioned reasons, the court grants the motion to dismiss for defendants Ercole, Perez, Mazzuca, Goord, Garetti, Capra and Bigit. The court allows Plaintiff leave to amend his complaint further against Hillman and Deacon for the harassment claim.

This constitutes the decision and order of the court.